[No. H016221. Sixth Dist. Aug. 13, 1997.]

SWAN MAGNETICS, INC., Petitioner, v.
THE SUPERIOR COURT OF SANTA CLARA COUNTY, Respondent;
ANTEK PERIPHERALS, INC., et al., Real Parties in Interest.

## COUNSEL

Jackson, Tufts, Cole & Black, Roy M. Bartlett and Gerald Z. Marer for Petitioner.

No appearance for Respondent.

Townsend and Townsend and Crew, Daniel J. Furniss, Theodore T. Herhold and Stephen J. Akerley for Real Parties in Interest.

## OPINION

**ELIA, Acting P. J.**—The question presented in this proceeding is whether the superior court may hear a motion to modify or dissolve an injunction that has been issued by an arbitrator pursuant to an agreement to arbitrate. The respondent, Santa Clara County Superior Court, ordered petitioner Swan Magnetics, Inc. (Swan) to comply with a discovery request that would enable real party in interest, Antek Peripherals, Inc. (Antek) to move for modification or dissolution of a permanent injunction arising out of contractual arbitration proceedings. Swan contends that once confirmed, the injunction was a final and binding award that is not subject to modification or dissolution. We conclude that the injunction is modifiable upon the proper showing, but the superior court is not the proper forum in which to obtain such relief. Accordingly, we will grant the petition.

### Background

Swan manufactures and sells test equipment used in computer disk drive products. In 1993 Swan began developing a high-speed, high-density fixed/removable disk drive capable of conventional hard disk performance at a lower cost. For this purpose Swan wished to use a sophisticated new "air-bearing" technology developed by Antek, which significantly improved the capacity and efficiency of conventional disk drives. In August 1993, Swan and Antek entered into a three-year exclusive license agreement, which permitted Swan to use Antek's technology in the development of its product in exchange for license fee and royalty payments.

In paragraph 13 of the license agreement, Antek agreed not to engage in any product development that competed with Swan's use of the licensed technology during the period of the license.[1] The agreement also provided that the parties would submit to binding arbitration should a dispute arise regarding the interpretation of the agreement.

In June 1995, Swan filed a complaint in superior court for damages and equitable relief based on Antek's breach of paragraph 13, the noncompetition clause. Swan alleged that Antek had agreed with Mitsumi Electric Co.

---

[1] The provision specifically stated: "Antek agrees not to engage in any product development that directly competes with the licensed fixed/removable disk drive Technology during the time that Swan continues payments under Exhibit B: License Fee Payment Schedule and Exhibit D: Technology Buy Out Schedule."

(Mitsumi) to develop a high-speed floppy disk drive using the technology Antek had licensed to Swan. Swan also sued Mitsumi in a separate action. Pursuant to the arbitration provision of the Swan-Antek contract, the action against Antek was referred to binding arbitration.

Retired Justice John T. Racanelli conducted a nine-day arbitration hearing at which extensive oral and written testimony was received, along with more than one hundred fifty exhibits and extensive briefing by the parties. In June 1996 he issued a decision concluding that Antek had breached the noncompetition clause. Swan was awarded a permanent injunction prohibiting Antek from "[d]irectly or indirectly engaging in any development, production, manufacture or sale of the Antek/Mitsumi or 'Mitsumi' drive," or any substantially similar product. Antek was also restrained from developing any 3.5-inch high-capacity floppy disk drive, and from taking any further action that would violate or threaten to violate paragraph 13 of the parties' agreement. The decision further stated that the permanent injunction would "remain in full force and effect for so long as Swan continues to make timely license payments as provided in the Swan/Antek agreement."

Over Antek's opposition, the trial court confirmed the award in August 1996. Notice of entry of judgment was served on September 18, 1996.

On October 3, 1996, Antek filed a notice of intent to move for a new trial under Code of Civil Procedure section 657, on the ground that "new evidence suggests that the circumstances have drastically changed requiring a new trial of this issue." In the alternative, Antek sought an order vacating the judgment under Code of Civil Procedure section 663, on the ground that the judgment was "not consistent with or supported by the facts."

On October 11, 1996, Antek submitted an ex parte application for limited expedited discovery, seeking an opportunity to request production of documents and take the deposition of Swan's chief executive officer (CEO). In support of the application, Antek again asserted a "recent and dramatic" change of circumstances that made the injunction "unfair and obsolete." According to Antek, Swan and Mitsumi had recently entered into an agreement in which Swan had settled its claims against Mitsumi in exchange for substantial monetary consideration. Antek believed that Mitsumi, motivated by a desire to complete the development and marketing of the Antek/ Mitsumi drive, had acquired an ownership interest in Swan through a "substantial infusion of cash capital." Meanwhile, Swan had not yet developed or marketed its own product and was unlikely to do so. Consequently, Antek argued, the harm on which the injunction was premised "has never come to fruition;" on the contrary, it "has now been turned into a highly

valuable asset of Swan." Because the injunction was no longer justified, Antek believed it should be permitted to resume use of its technology.

In order to obtain vacation of the judgment, Antek sought discovery of the facts relating to the Swan-Mitsumi agreement as well as Swan's plans regarding development of its own fixed/removable disk drive. Swan opposed discovery on the theory that the trial court lacked jurisdiction to make such an order. Justice Racanelli's arbitration decision was final and binding, Swan argued, and the court had no statutory authority to order discovery. The trial court nevertheless found it had authority not to vacate the judgment or grant a new trial, but to modify the injunction. Accordingly, the court granted Antek leave to conduct discovery and ordered Swan to produce documents and make its CEO available for deposition on facts relevant to possible modification.

## Discussion

 The sole issue before us is whether Antek may seek modification or vacation of the injunction in superior court. If so, the court properly allowed it to engage in discovery for the purpose of pursuing such a motion. Swan, however, contends there is no authority for a court's modification or dissolution of a permanent injunction if the injunction has been issued by an arbitrator. Arbitration, Swan argues, is intended to effect a final and binding resolution of disputes. To permit a court to hear a motion to vacate would frustrate the purposes underlying the arbitration statutes because it would be required to revisit old issues of fact and law as well as decide whether new circumstances merited a change. In addition, Swan points out, the court would be proceeding under different procedural and evidentiary rules that would impede any attempt to draw upon the prior findings of the arbitrator.

Antek maintains that Civil Code section 3424 and Code of Civil Procedure section 1287.4 authorize the court to modify or dissolve the injunction. Civil Code section 3424 permits such action upon a showing of a material change in the facts or law on which the injunction was based, or where it would serve "the ends of justice."[2] Code of Civil Procedure section 1287.4

---

[2]Subdivision (a) of Civil Code section 3424 states: "Upon notice and motion, the court may modify or dissolve a final injunction upon a showing that there has been a material change in the facts upon which the injunction was granted, that the law upon which the injunction was granted has changed, or that the ends of justice would be served by the modification or dissolution of the injunction."

directs the entry of judgment upon an arbitration award after confirmation, and establishes the enforceability of that judgment.[3]

Unquestionably, Civil Code section 3424 permits modification and dissolution of court-issued final injunctions. The moving party may obtain such an order upon a showing "that there has been a material change in the facts upon which the injunction was granted, that the law upon which the injunction was granted has changed, or that the ends of justice would be served by the modification or dissolution of the injunction." This statute codifies a long-settled judicial recognition of the inherent power of the court to amend an injunction in the interest of justice when ". . . there has been a change in the controlling facts upon which the injunction rested, or the law has been changed, modified or extended, or where the ends of justice would be served by modification." (*Sontag Chain Stores Co.* v. *Superior Court* (1941) 18 Cal.2d 92, 95 [113 P.2d 689]; *Union Interchange, Inc.* v. *Savage* (1959) 52 Cal.2d 601, 604 [342 P.2d 249]; *Salazar* v. *Eastin* (1995) 9 Cal.4th 836, 849 [39 Cal.Rptr.2d 21, 890 P.2d 43].)

The statutory scheme providing for arbitration, title 9 of the Code of Civil Procedure, contains no indication that this settled rule of modifiability is inapplicable in an arbitrated controversy. Swan nonetheless argues that any resolution by arbitration must be deemed final, and its "sanctity" may not be disturbed after the award is confirmed. The same argument was raised in *Sontag Chain Store Co.* v. *Superior Court, supra,* 18 Cal.2d 92, with respect to the finality of court-ordered injunctions. The Supreme Court explained why an injunction requires a different rule from those applicable to judgments in general: "The reason for the rule is that there must be an end to litigation, and hence it is the long established policy of the law to, so far as possible, prohibit the further contest of an issue once judicially decided and to accord finality to judgments. [¶] But the reason for the rule ceases and the rule fails to apply in the case of a preventive injunction of the type here under review. This is so because the decree, although purporting on its face to be permanent, is in essence of an executory or continuing nature, creating no right but merely assuming to protect a right from unlawful and injurious interference. Such a decree, it has uniformly been held, is always subject, upon a proper showing, to modification or dissolution by the court which rendered it." (*Id.* at pp. 94-95; accord, *Union Interchange, Inc.* v. *Savage, supra,* 52 Cal.2d at p. 604.)

---

[3]Code of Civil Procedure section 1287.4 provides: "If an award is confirmed, judgment shall be entered in conformity therewith. The judgment so entered has the same force and effect as, and is subject to all the provisions of law relating to, a judgment in a civil action; and it may be enforced like any other judgment of the court in which it is entered." (Further undesignated statutory references are to the Code of Civil Procedure.)

An injunction does not acquire greater finality merely by being the product of arbitration. The strong judicial and legislative policy in favor of arbitral finality, the foundation of Swan's challenge, is directed at judicial second-guessing upon petitions to confirm, correct, or vacate arbitration awards. The historical emphasis on the conclusive nature of the award is rooted in the recognition that parties who choose to arbitrate their grievances wish to avoid the delays and costs associated with litigation in a judicial forum. (*Moncharsh* v. *Heily & Blase* (1992) 3 Cal.4th 1, 9 [10 Cal.Rptr.2d 183, 832 P.2d 899]; §§ 1286, 1286.2, 1286.6) Thus, a result reached through arbitration is not inherently "more final" than decisions reached by a trial court; rather, the process is considered to be final with respect to subsequent challenges to the merits *in the court system.*

We therefore conclude that injunctions issued by an arbitrator may be modified or dissolved upon a material change of circumstances. We do not agree, however, with Antek's assertion that the trial court is the proper tribunal in which to seek such amendments. This matter pertains to a continuing dispute over a contract that contains an express agreement to arbitrate. Any judicial action on the merits of such a dispute would be contrary to the parties' expressed intent to resolve their differences through this alternative means rather than engage in the more costly and time-consuming process of litigating in court.

█ Antek suggests that section 1287.4 permits the superior court to modify or dissolve an injunction issued by an arbitrator. This statute, Antek points out, contains no specific exception for judgments resulting from arbitration, while it does contain a provision giving the judgment entered on the award "the same force and effect as," and "subject to" all law applicable to, a judgment in a civil action. Antek maintains that the judgment here is "subject to" provisions such as sections 2036 (authorizing discovery pending appeal of a judgment) and 533 (authorizing modification of temporary injunctions) and Civil Code section 3424. Swan, on the other hand, insists that section 1287.4 only provides for *enforcement* of the award. This statute, however, aids neither party.

Antek focuses on the following language in section 1287.4: "The judgment so entered has the same force and effect as, and is subject to all the provisions of law relating to, a judgment in a civil action . . . ." Antek suggests that the language "is subject to" encompasses statutes authorizing the dissolution of injunctions. Its premise is misguided. The phrase "subject to" is not synonymous with "according to" or "consistent with"; it means conditioned upon, limited by, or subordinate to. (*Coffey* v. *Superior Court* (1905) 147 Cal. 525, 535 [82 P. 75]; *National Auto. & Casualty Ins. Co.* v.

*Frankel* (1988) 203 Cal.App.3d 830, 835 [250 Cal.Rptr. 236]; *Shay* v. *Roth* (1923) 64 Cal.App. 314, 318 [221 P. 967]; *Colonial Savings & L. Assn.* v. *Redwood Empire Title Co.* (1965) 236 Cal.App.2d 186, 191-192 [46 Cal.Rptr. 16]; *State* v. *Willburn* (1967) 49 Hawaii 651 [426 P.2d 626, 630].) Thus, if the Legislature had made the entry of a judgment "subject to" a statutory provision, the effect of that judgment would be controlled and limited by the statute. It would be incongruous for the Legislature to declare a judgment "subject to" laws that not only are consistent with that judgment but even authorize further orders related to that judgment.

■ Antek further contends that neither authority nor policy precludes judicial modification or dissolution of the injunction. We disagree. While neither statutory nor case law addresses the precise issue before us, the judicial policy of deference to the judgment of arbitrators provides appropriate guidance. Consistent with their agreement to arbitrate, "parties to private, nonjudicial arbitration typically expect ' "their dispute will be resolved without necessity for any contact with the courts." ' " (*Advanced Micro Devices, Inc.* v. *Intel Corp.* (1994) 9 Cal.4th 362, 373 [36 Cal.Rptr.2d 581, 885 P.2d 994] ; *Moncharsh* v. *Heily & Blase*, *supra*, 3 Cal.4th at p. 9.) Accordingly, the Supreme Court has emphasized on more than one occasion that " 'judicial intervention in the arbitration process be minimized.' " (*Advanced Micro Devices, Inc.* v. *Intel Corp.*, *supra*, 9 Cal.4th at p. 373, quoting *Moncharsh* v. *Heily & Blase*, *supra*, 3 Cal.4th at p. 10.) "Were courts to reevaluate independently the merits of a particular remedy, the parties' contractual expectation of a decision according to the arbitrators' best judgment would be defeated." (*Advanced Micro Devices, Inc.* v. *Intel Corp.*, *supra*, 9 Cal.4th at p. 375.)

■ An agreement to arbitrate implies an understanding that the arbitrator, "unless specifically restricted by the agreement to following legal rules, ' "may base [his or her] decision upon broad principles of justice and equity . . . and make [the] award *ex aequo et bono* [according to what is just and good]." [Citation.]' " (*Advanced Micro Devices, Inc.* v. *Intel Corp.*, *supra*, 9 Cal.4th at pp. 374-375.) Arbitrators thus have wide discretion both to determine the scope of their powers and to fashion a just remedy, including equitable relief that a court may not grant, as long as the remedy is rationally related to the contract and the breach. (*Id.* at pp. 381, 389.) The resulting award must be upheld by the reviewing court unless the court is "*compelled to infer [that] the award was based on an extrinsic source.*" (*Id.* at p. 381.)

In this case the Swan-Antek license agreement included a broad provision for binding arbitration in the event of any dispute over "the interpretation of this Agreement." ■ Notwithstanding the court's stated intention not to

permit "relitigating the issue that was arbitrated," a judicial decision on the continuing appropriateness of an injunction would inevitably require resolution of the merits of the parties' continuing dispute and invite reexamination of facts the arbitrator had previously determined. To thus permit renewal of litigation in the judicial arena would contravene the parties' expectation that their differences be resolved solely through the arbitration process and would bypass the policy favoring this alternative method of dispute resolution. The issue of the continued appropriateness of the arbitrator's remedy is therefore not properly before the superior court. If Antek believes that new facts warrant a different result, it may initiate a new arbitration proceeding for that purpose.

We emphasize that, contrary to Antek's and Swan's understanding, the authority of the arbitrator to act upon a request for modification does not arise only upon referral by the superior court.[4] Nor is it necessary, as Swan contends, that the arbitrator reserve jurisdiction to modify the injunction in the original award. Instead, the arbitrator's authority to act in these circumstances arises from the inherent modifiability of injunctions and the agreement of the parties to arbitrate their disputes rather than litigate them in court. Should Antek renew its request in the proper forum, the resulting arbitration will be a new proceeding, not a reopening of a final determination.[5]

In summary, we conclude that, although the injunction is subject to modification or dissolution upon a showing of changed circumstances, any assertion of such a change must be raised and presented through arbitration, not in superior court.[6] Because the contemplated judicial remedy is unavailable, court-ordered discovery is inappropriate.

### DISPOSITION

The petition is granted. Let a writ of mandate issue, directing the superior court to vacate its discovery order and enter a new order denying Antek's

[4]The parties were asked to provide supplemental briefing on the question of whether modification or dissolution of an injunction may be obtained through arbitration. Both Swan and Antek, while offering opposing answers, assumed that arbitration of such a request could take place only if the *court* first determines that changed circumstances exist and then remands the matter to the arbitrator for findings or decision. On the contrary, as we have discussed, the court has no authority to evaluate the merits of Antek's request whether it purports to resolve the matter or only take a preliminary step in that process.

[5]Unless otherwise provided by the parties' agreement, an arbitrator may amend an award only on limited grounds and conditions specified by statute (§§ 1284, 1286.6.) Once the period has expired for making corrections to the award, the matter is beyond the power of the arbitrator to act upon further.

[6]We express no opinion as to whether changed circumstances exist here. We also do not intend to suggest that parties may bypass other substantive and procedural requirements for arbitration of their controversy.

application for discovery with prejudice. The alternative writ is discharged and the stay of further proceedings in superior court shall be dissolved when this opinion becomes final. Each party shall bear its own costs in this proceeding.

Wunderlich, J., and Mihara, J., concurred.

On September 12, 1997, the opinion was modified to read as printed above. Petitioner's application for review by the Supreme Court was denied October 29, 1997.