[No. E021505. Fourth Dist., Div. Two. Apr. 21, 1999.]

DONALD ERICKSON, Plaintiff and Respondent, v.
AETNA HEALTH PLANS OF CALIFORNIA, INC., Defendant and
Appellant.

**[Opinion certified for partial publication.\*]**

*Pursuant to California Rules of Court, rules 976(b) and 976.1, this opinion is certified for publication with the exception of part II.A.3.

648

**COUNSEL**

Epstein, Becker & Green, William A. Helvestine, Michael T. Horan and Kevin M. Corbett for Defendant and Appellant.

Law offices of Leibovic & Tysch and Gary L. Tysch for Plaintiff and Respondent.

## OPINION

**RICHLI, J.**—Aetna Health Plans of California, Inc., appeals from the denial of its motion to compel arbitration of claims arising from its alleged failure to provide timely cancer treatment to Donald Erickson under Aetna's Medicare coverage plan. We conclude that: (1) although Aetna's arbitration provision failed to comply with Health and Safety Code section 1363.1, that statute is preempted by the Federal Arbitration Act; and (2) the arbitration provision is not otherwise invalid under general principles of law. Accordingly, we reverse.

I

### FACTUAL AND PROCEDURAL BACKGROUND

Aetna is a federally qualified health maintenance organization. Pursuant to an agreement with the federal Health Care Financing Administration, Aetna offered replacement Medicare coverage to eligible individuals under a plan called Senior Choice. Mr. Erickson enrolled in Senior Choice in about April 1993.

Among other things, the Senior Choice handbook[1] set forth the options available to plan members in the event of a dispute. After explaining the procedure for filing a grievance, the handbook stated: "If you are not satisfied with the [grievance panel's] proposed resolution, you may request binding arbitration. [¶] **If You Want To Have Binding Arbitration** [¶] Any differences between you and the Health Plan (other than those subject to the Medicare Appeals Procedure) are subject to binding arbitration."

According to his complaint, Mr. Erickson was found to have prostate cancer in 1995. His physician recommended proton beam therapy, and Aetna represented the procedure would be covered. Later, however, Aetna took the position the therapy was not covered. Although Aetna eventually agreed to cover the therapy, the delay increased the risk Mr. Erickson's cancer would metastasize and threaten his life.

Mr. Erickson brought this action in June 1996, alleging that Aetna's conduct breached its agreement with Mr. Erickson and the covenant of good faith contained in that agreement, and also constituted negligence, negligent misrepresentation, infliction of emotional distress, and fraud. Aetna moved to compel arbitration based on the provision in the Senior Choice handbook

---

[1]As do the parties, we refer to the 1995 version of the Senior Choice handbook.

quoted above. The court denied the motion, ruling that (1) the arbitration clause was not sufficiently clear and unequivocal to be valid under California law, and (2) the clause failed to comply with the disclosure requirements of Health and Safety Code section 1363.1.

## II

### DISCUSSION

### A. *FAA Preemption of Health and Safety Code Section 1363.1*

#### 1. *Section 1363.1*

Health and Safety Code Section 1363.1 (section 1363.1) provides that a binding arbitration clause in a health care service plan must incorporate various disclosures, including a clear statement of "whether the subscriber or enrollee is waiving his or her right to a jury trial . . . ." The waiver language must be substantially in the wording provided in Code of Civil Procedure section 1295, subdivision (a),[2] and must appear immediately before the signature line for the individual enrolling in the plan. (§ 1363.1, subds. (c), (d).)

It is undisputed Aetna's arbitration clause did not comply with these requirements. Accordingly, if section 1363.1 applies, the clause is invalid.[3]

#### 2. *The FAA*

The Federal Arbitration Act (FAA), title 9 United States Code section 1 et seq., applies to any "contract evidencing a transaction involving commerce" which contains an arbitration clause. (9 U.S.C. § 2.) Section 2 of the FAA (section 2) provides that arbitration provisions "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." (9 U.S.C. § 2.) State courts may, without violating section 2, decline to enforce arbitration clauses on the basis of "generally applicable contract defenses, such as fraud, duress or

---

[2] I.e., that any dispute will be determined by arbitration "and not by a lawsuit or resort to court process," and that the parties "are giving up their constitutional right to have any such dispute decided in a court of law before a jury . . . ."

[3] Section 1363.1 does not apply to policies issued before its enactment. (*Wolitarsky* v. *Blue Cross of California* (1997) 53 Cal.App.4th 338, 348 [61 Cal.Rptr.2d 629].) The statute was not enacted until 1994, after Mr. Erickson enrolled in the Senior Choice plan. The lower court ruled this fact was not significant because the plan was subsequently changed after the statute's effective date. We do not address the propriety of that ruling in view of our conclusion on the preemption issue.

unconscionability." However, they may not do so on the basis of "state laws applicable *only* to arbitration provisions." (*Doctor's Associates, Inc.* v. *Casarotto* (1996) 517 U.S. 681, 687 [116 S.Ct. 1652, 1656, 134 L.Ed.2d 902].)

### 3. *Preservation of Preemption Issue in Lower Court**

. . . . . . . . . . . . . . . . . . . . . . . . . . . .

### 4. *Interstate Commerce*

■ "Commerce" for purposes of FAA coverage "is to be broadly construed so as to be coextensive with congressional power to regulate under the Commerce Clause." (*Foster* v. *Turley* (10th Cir. 1986) 808 F.2d 38, 40; accord, *Willis* v. *Dean Witter Reynolds, Inc.* (6th Cir. 1991) 948 F.2d 305, 310.) ■ In an analogous context, it has been held that a health care provider's treatment of Medicare patients, receipt of reimbursement from Medicare, and purchase of out-of-state medicines and supplies constitutes being engaged in interstate commerce for purposes of the Sherman Act. (See, e.g., *Summit Health, Ltd.* v. *Pinhas* (1991) 500 U.S. 322, 329 [111 S.Ct. 1842, 1847, 114 L.Ed.2d 366]; *BCB Anesthesia Care* v. *Passavant Mem. Area Hosp.* (7th Cir. 1994) 36 F.3d 664, 666; *Brown* v. *Our Lady of Lourdes Medical Center* (D.N.J. 1991) 767 F.Supp. 618, 626.)

Here, as stated, the Senior Choice plan replaces Medicare coverage and operates pursuant to a contract with the federal government. Coverage is available only to Medicare patients; the patients pay for coverage through Social Security deductions or payments to Medicare. Additionally, according to Aetna's Medicare compliance manager, Aetna, in performing its Medicare contract, enters into interstate contracts with vendors and service providers operating on a national basis.

None of this evidence was disputed, nor does the record suggest any credibility issues or other factual conflicts which the court had to resolve in ruling that the Senior Choice plan did not involve interstate commerce. Reviewing the ruling independently as a question of law (see *Ghirardo* v. *Antonioli* (1994) 8 Cal.4th 791, 799 [35 Cal.Rptr.2d 418, 883 P.2d 960]), we therefore conclude the plan involves interstate commerce and is subject to the preemption provision of the FAA. The remaining question is whether section 1363.1 is inconsistent with that provision.

### 5. *Preemption of Section 1363.1*

In *Doctor's Associates, Inc.* v. *Casarotto, supra,* 517 U.S. 681, the United States Supreme Court held the FAA preempted a Montana statute which

*See footnote, *ante,* page 646.

required that an arbitration clause be typed in underlined capital letters on the first page of a contract in order to be enforceable. The court stated section 2 of the FAA precludes states from "singling out arbitration provisions for suspect status." It concluded the Montana law directly conflicted with section 2 by conditioning the enforceability of arbitration agreements "on compliance with a special notice requirement not applicable to contracts generally." (*Doctor's Associates, Inc., supra,* at p. 687 [116 S.Ct. at p. 1656].)

Section 1363.1 similarly imposes on arbitration clauses in health care plans "a special notice requirement not applicable to contracts generally." Health care arbitration clauses must satisfy special requirements as to form and content which are not imposed on contracts generally, nor even on health care contracts generally unless they contain arbitration clauses. Section 1363.1 thus " 'takes its meaning precisely from the fact that a contract to arbitrate is at issue . . . ,' " and, consequently, conflicts with section 2 of the FAA. (*Doctor's Associates, Inc.* v. *Casarotto, supra,* 517 U.S. 681, 685 [116 S.Ct. 1652, 1655].) Section 1363.1 therefore is preempted as applied to the Senior Choice plan arbitration clause, and the lower court's refusal to enforce the clause can be upheld, if at all, only on the basis of generally applicable California law.

B.   *Validity of Arbitration Clause Under General Principles of Law*

Mr. Erickson offers three generally applicable legal principles in support of the lower court's refusal to enforce the arbitration clause: first, that the Senior Choice plan is a contract of adhesion and the clause therefore cannot be enforced absent a showing that the plan member has been made aware of its existence and implications; second, that the language of the clause is too misleading to be valid even under the standards for nonadhesion contracts; and, third, that Mr. Erickson's mistaken interpretation of the clause prevented mutual assent, so that no agreement to arbitrate was formed. We discuss each contention in order.

1.   *Contract of Adhesion*

■    Although normally a party to a contract is bound by its provisions whether or not he or she is aware of them, courts will not enforce provisions in adhesion contracts which favor the stronger party unless they are conspicuous, clear, and not inconsistent with the parties' reasonable expectations. (*Madden* v. *Kaiser Foundation Hospitals* (1976) 17 Cal.3d 699, 710 [131 Cal.Rptr. 882, 552 P.2d 1178].) We reject Mr. Erickson's argument that the Senior Choice arbitration clause should be governed by these principles, for several reasons.

First, Mr. Erickson did not make the adhesion argument in the lower court, and, as he recognizes, the court did not rule on the issue. ▮ Although an appellate court can affirm a ruling on a ground not adopted by the trial court, it should not do so where the alternative ground presents fact issues which the opposing party and trial court did not have an opportunity to address. (*Rutan* v. *Summit Sports, Inc.* (1985) 173 Cal.App.3d 965, 974 [219 Cal.Rptr. 381]; *In re Marriage of Moschetta* (1994) 25 Cal.App.4th 1218, 1227 [30 Cal.Rptr.2d 893].)

▮ "Whether a contract is one of adhesion generally would present a mixed question of law and fact." (*Woodard* v. *Southern Cal. Permanente Medical Group* (1985) 171 Cal.App.3d 656, 667 [217 Cal.Rptr. 514].) To make that determination, a court would have to consider the conditions under which the contract was negotiated and executed, including an assessment of the parties' relative bargaining power. (See, e.g., *Engalla* v. *Permanente Medical Group, Inc.* (1997) 15 Cal.4th 951, 985 [64 Cal.Rptr.2d 843, 938 P.2d 903].) Such questions are better resolved by the trial court in the first instance.

▮ Second, there is nothing in the present record to support the assertion that the Senior Choice plan is a contract of adhesion. In fact, the record supports the opposite conclusion. In *Madden* v. *Kaiser Foundation Hospitals*, *supra*, 17 Cal.3d 699, the Supreme Court held that an arbitration clause in a group medical services contract negotiated by a state agency on behalf of public employees was not unenforceable under adhesion principles. The court noted the agency had considerable bargaining strength, employees were free to opt out of the plan, and the clause did not inherently favor the plan over the employees, as both sides stood to benefit from the speed and economy of arbitration. (*Id.*, at pp. 711-712.)[5]

Here, similarly, the Senior Choice plan is provided pursuant to an agreement negotiated between Aetna and an agency of the federal government, an entity which presumably had bargaining power comparable or superior to Aetna's. Medicare subscribers are not required to participate in the plan, and the arbitration clause does not inherently favor Aetna, but "merely substitutes one forum for another." (*Madden* v. *Kaiser Foundation Hospitals*, *supra*, 17 Cal.3d 699, 711.) The case is thus wholly unlike *Wheeler* v. *St. Joseph Hospital* (1976) 63 Cal.App.3d 345 [133 Cal.Rptr. 775, 84 A.L.R.3d

---

[5]In *Engalla* v. *Permanente Medical Group, Inc.*, *supra*, 15 Cal.4th 951, the Supreme Court recognized that a group medical plan might have "characteristics of an adhesion contract" under some circumstances, such as if only a small number of employees were enrolled and the employer therefore did not have much bargaining power. (*Id.*, at p. 985.) No comparable circumstances are present here.

343], on which Mr. Erickson relies. In *Wheeler*, this court held a patient was not bound by an arbitration clause contained in a hospital's standard printed " 'Conditions of Admission' " form. (*Id.*, at p. 357.) We stated, "A patient like Mr. Wheeler realistically has no choice but to seek admission to the hospital to which he has been directed by his physician and to sign the printed forms necessary to gain admission." (*Id.*, at p. 366.) We also noted that ". . . unlike the situation in *Madden*, Mr. Wheeler was not represented by a state agency which could neutralize the advantage in bargaining power enjoyed by the defendant hospital." (*Ibid.*)

▪ Finally, it has repeatedly been stated that ". . . state adhesion contract principles are inapplicable to the enforcement of arbitration clauses in an agreement governed by the Federal Arbitration Act . . . ." (*Chan v. Drexel Burnham Lambert, Inc.* (1986) 178 Cal.App.3d 632, 637 [223 Cal.Rptr. 838]; accord, *Tonetti v. Shirley* (1985) 173 Cal.App.3d 1144, 1148 [219 Cal.Rptr. 616].) ▪ Since we have concluded the Senior Choice plan is governed by the FAA, the validity of the arbitration clause must be determined by reference to the principles applicable to contracts generally rather than the special rules applicable to adhesion contracts. We turn now to that determination.

### 2. Interpretation of Contract Language

Mr. Erickson next argues that even under the standards for nonadhesion contracts, the language of the arbitration clause is too misleading to be valid. He focuses on the portions of the clause which inform the plan member that he or she "*may request* binding arbitration," and set forth the procedure to be followed "*If You Want* To Have Binding Arbitration." (Italics added.) According to Mr. Erickson, this permissive language conveys the impression arbitration is optional with the plan member rather than the only method available for resolution of disputes. Aetna, on the other hand, argues that, because the clause plainly states *any* disputes are "subject to binding arbitration," the earlier statement that a member "may" request arbitration, and the directions as to how to proceed if he or she should "want" arbitration, merely reflect the fact the member may opt not to proceed with arbitration if he or she is satisfied with the grievance outcome, not that he or she may forgo arbitration and proceed to court.

#### a. Principles of Construction

▪ We first must determine the applicable principles of construction. California courts recognize that the FAA reflects " 'a liberal federal policy favoring arbitration agreements, notwithstanding any state substantive or

procedural policies to the contrary.'" (*Spellman* v. *Securities, Annuities & Ins. Services, Inc.* (1992) 8 Cal.App.4th 452, 458 [10 Cal.Rptr.2d 427], quoting *Moses H. Cone Hospital* v. *Mercury Constr. Corp.* (1983) 460 U.S. 1, 24 [103 S.Ct. 927, 941, 74 L.Ed.2d 765]; *Cione* v. *Foresters Equity Services, Inc.* (1997) 58 Cal.App.4th 625, 633 [68 Cal.Rptr.2d 167].) Mr. Erickson notes, however, that "[t]he question of whether the parties agreed to arbitrate is answered by applying state contract law even when it is alleged that the agreement is covered by the FAA." (*Cheng-Canindin* v. *Renaissance Hotel Associates* (1996) 50 Cal.App.4th 676, 683 [57 Cal.Rptr.2d 867].) He characterizes the question whether the Senior Choice handbook provides for mandatory or only optional arbitration as a question of "whether the parties agreed to arbitrate." Therefore, he argues, the FAA policy favoring arbitration does not come into play in addressing that question.

We do not agree. First, "California law incorporates many of the basic policy objectives contained in the FAA, including a presumption in favor of arbitrability . . . ." (*Banner Entertainment, Inc.* v. *Superior Court* (1998) 62 Cal.App.4th 348, 357 [72 Cal.Rptr.2d 598].) Thus, even in non-FAA cases, courts " 'are guided by the rule that, contractual arbitration being a favored method of resolving disputes, every intendment will be indulged to give effect to such proceedings.' [Citation.]" (*Titan Group, Inc.* v. *Sonoma Valley Sanitation Dist.* (1985) 164 Cal.App.3d 1122, 1127 [211 Cal.Rptr. 62].) Additionally, where a transaction falls under the FAA, even the threshold decision of whether there is an agreement to arbitrate "must be made ' "with a healthy regard for the federal policy favoring arbitration." ' [Citation.]" (*The Energy Group, Inc.* v. *Liddington* (1987) 192 Cal.App.3d 1520, 1528 [238 Cal.Rptr. 202]; accord, *Banner Entertainment, Inc.* v. *Superior Court*, *supra*; *City of Vista* v. *Sutro & Co.* (1997) 52 Cal.App.4th 401, 407 [60 Cal.Rptr.2d 488].)

Moreover, *Cheng-Canindin* v. *Renaissance Hotel Associates*, *supra*, 50 Cal.App.4th 676, and the cases on which it relied, involved true "threshold" issues of contract formation, which went to the very existence of an agreement to arbitrate, e.g., whether the procedure to which the parties agreed actually constituted arbitration (*Cheng-Canindin*, *supra*, at p. 684; *Wasyl, Inc.* v. *First Boston Corp.* (9th Cir. 1987) 813 F.2d 1579, 1581-1582); whether the parties intended to incorporate by reference an arbitration provision contained in a separate document (*Chan* v. *Drexel Burnham Lambert, Inc.*, *supra*, 178 Cal.App. 3d at p. 640; *Progressive Cas. Ins. Co.* v. *C.A. Reaseguradora Nacional* (2d Cir. 1993) 991 F.2d 42, 45-46; *Cook Chocolate Co.* v. *Salomon, Inc.* (S.D.N.Y. 1988) 684 F.Supp. 1177, 1182); or whether a nonparty to the arbitration agreement could enforce the arbitration clause

(*Ziegler* v. *Whale Securities Co., L.P.* (N.D.Ind. 1992) 786 F.Supp. 739, 741-742). In this case, in contrast, there is no dispute that the parties had a valid agreement which contained a clause providing for arbitration of disputes. The only question concerns the proper *construction* of that clause, i.e., whether it requires arbitration or merely makes it available at the option of the plan member.

Issues concerning "the construction of the contract language itself" are subject to the FAA. (*Moses H. Cone Hospital* v. *Mercury Constr. Corp.*, *supra*, 460 U.S. 1, 24 [103 S.Ct. 927, 941].) Under section 2 of the FAA, a court may not construe an arbitration agreement "in a manner different from that in which it otherwise construes nonarbitration agreements under state law." (*Perry* v. *Thomas* (1987) 482 U.S. 483, 492-493, fn. 9 [107 S.Ct. 2520, 2527, 96 L.Ed.2d 426].) Thus, a court cannot apply a state law requirement that an arbitration clause be "express" or "unequivocal" if state law requires that nonarbitration agreements be proven only by a mere preponderance of the evidence. (*Progressive Cas. Ins. Co.* v. *C.A. Reaseguradora Nacional*, *supra*, 991 F.2d 42, 46; *Huntington Intern. Corp.* v. *Armstrong World Industries Inc.* (E.D.N.Y. 1997) 981 F.Supp. 134, 138.) Similarly, where an FAA contract is involved, ". . . ambiguities in an arbitration clause are to be resolved in favor of arbitration, notwithstanding the California rule that a contract is construed most strongly against the drafter . . . ." (*Chan* v. *Drexel Burnham Lambert, Inc.*, *supra*, 178 Cal.App.3d 632, 639.)

■ These authorities persuade us that, regardless of how the issue in this case is characterized, we must, in addressing it, be guided by the principles favoring arbitration as a preferred means of resolving disputes. With those principles in mind, we turn to the language of the arbitration clause in this case.

b. *Application*

The parties have not identified any authority construing the precise language at issue here, and we are aware of none. They do, however, cite three decisions which are instructive, as all concerned agreements which, like the present one, provided that disputes "may" be submitted to arbitration. In the first, *Service Employees Internat. Union, Local 18* v. *American Building Maintenance Co.* (1972) 29 Cal.App.3d 356 [105 Cal.Rptr. 564] (*Service Employees*), the agreement provided that " 'the issue in dispute may be submitted to an impartial arbitrator.' " (*Id.*, at p. 358, italics omitted.) The court held the clause provided for mandatory rather than consensual arbitration. Since the parties always could elect consensual arbitration without a

contract provision, interpretation of the clause to require only consensual arbitration would make the provision of little purpose. (*Ibid.*) The court concluded the word "may" in this context merely meant a party who did not want arbitration had the option to abandon the claim. (*Id.*, at p. 360.)

In *Titan Group, Inc.* v. *Sonoma Valley Sanitation Dist.*, *supra*, 164 Cal.App.3d 1122 (*Titan*), the agreement similarly stated that disputes "may" be subject to the decision of a third person to be agreed upon by the parties. However, it also provided that all disputes " '. . . will be decided by arbitration *if the parties hereto mutually agree, or in a court of competent jurisdiction* within the State in which the owner is located.' " (*Id.*, at p. 1125, original and added italics.) The court found no mandatory arbitration requirement, distinguishing *Service Employees* on the basis that the agreement in that case made no mention of a court proceeding as an available option. (*Id.*, at p. 1129.)

In *Pacific Gas & Electric Co.* v. *Superior Court* (1993) 15 Cal.App.4th 576 [19 Cal.Rptr.2d 295] (*Pacific Gas & Electric*), the agreement stated disputes " 'may be submitted' " by either party to arbitration. (*Id.*, at p. 595.) The court concluded this provision mandated arbitration, stating, "In this context the 'may' signifies the right of the party to invoke arbitration." (*Ibid.*)

Applying these decisions, and keeping in mind the policy, discussed *ante*, favoring construction of agreements in favor of arbitration, we conclude the provision in this case should be interpreted to require arbitration rather than merely to permit it. As did the courts in *Service Employees* and *Pacific Gas & Electric*, we construe the permissive language to mean simply that a member may, in lieu of proceeding to arbitration, merely forgo further review and accept the proposed resolution of the grievance panel. Moreover, the provision in this case contains additional language not present in *Service Employees* and *Pacific Gas & Electric*, which further emphasizes the mandatory nature of arbitration. The provision states that "[a]ny" disputes other than those subject to the Medicare appeals procedure "are subject to binding arbitration." The phrase "subject to" means "conditioned upon, limited by, or subordinate to." (*Swan Magnetics, Inc.* v. *Superior Court* (1997) 56 Cal.App.4th 1504, 1510 [66 Cal.Rptr.2d 541]; see also *Gapusan* v. *Jay* (1998) 66 Cal.App.4th 734, 741 [78 Cal.Rptr.2d 250] ["The phrase 'subject to' means 'subordinate to.' "].) If a dispute is "subordinate to" binding arbitration, the reasonable conclusion is that arbitration is mandatory, not optional.

We also note that, in contrast to the agreement in *Titan*, the Senior Choice handbook makes no reference to court resolution of disputes subject to

arbitration. Only with respect to Medicare appeals (which are excluded from the arbitration provision) is there any reference to court proceedings; the handbook indicates that a dissatisfied member in a Medicare appeal "may file a civil suit with a Federal district court." The absence of any such reference to a court proceeding in the arbitration provision further underscores the absence of a judicial remedy with respect to disputes which are subject to arbitration.

We acknowledge the language of the arbitration clause could have been clearer.[6] But, as stated *ante*, we are not at liberty under section 2 of the FAA to impose heightened requirements of clarity on arbitration clauses beyond those applicable to contracts generally. It appears the lower court did just that in ruling that the clause in this case was not sufficiently clear and unequivocal to be valid. Since the court found the FAA did not apply, it understandably did not concern itself with whether the FAA might preclude such a heightened standard. At any rate, as we have seen, even under ordinary principles of construction as applied in *Service Employees* and *Pacific Gas & Electric*, which did not concern FAA contracts, the use of permissive language in this case did not make the clause so ambiguous as to be unenforceable.

Similarly, although we might in other circumstances construe any uncertainty against Aetna as the drafting party, that principle is subordinate to the policy favoring arbitration when construing FAA agreements. (*Chan* v. *Drexel Burnham Lambert, Inc., supra*, 178 Cal.App.3d 632, 639.) Additionally, the principle does not apply where, as here, compulsory arbitration does not inherently favor the drafting party. (*Pacific Gas & Electric, supra*, (1993) 15 Cal.App.4th 576, 596.) We therefore conclude the court erred in ruling the clause was not sufficiently clear to be enforceable.

### 3. *Unilateral Mistake*

■ Mr. Erickson finally cites the principle that a party may rescind a contract on the ground of unilateral mistake, where the mistake " 'is known to the other contracting party and is encouraged or fostered by that party.'

---

[6]Likewise, we do not intend our conclusion that the clause is enforceable in this case to suggest we endorse its form or content. To the contrary, the seemingly unnecessary inclusion of permissive language in the clause virtually invites a member who wishes to avoid arbitration to argue, as Mr. Erickson does here, that the clause only provides for voluntary and not mandatory arbitration. Ironically, an earlier version of the handbook, which was sent to Mr. Erickson in 1993, did not contain that language, stating simply that any dispute was "subject to binding arbitration" unless prohibited by the liability insurer for the member's physician.

[Citation.]" (*Bunnett* v. *Regents of University of California* (1995) 35 Cal.App.4th 843, 855 [41 Cal.Rptr.2d 567].) That principle, however, only applies where the mistaken party submits evidence that the other party knew about and encouraged or fostered the mistake. (*Ibid.*) As Aetna points out, Mr. Erickson submitted no such evidence.

## III

### DISPOSITION

The judgment is reversed. The matter is remanded with directions to grant Aetna's motion for arbitration.

Hollenhorst, Acting P. J., and Gaut, J., concurred.