Filed 8/4/23  Sametc v. Elms  CA1/4

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| SAMETC, LLC,<br><br>    Petitioner and Respondent,<br><br>        v.<br><br>TED ELMS et al.,<br><br>    Defendants;<br><br>REGINALD HINDLEY<br><br>    Appellant. | A161771<br><br>(San Francisco County Super.<br>Ct. No. CPF-14-513720)<br><br><br>ORDER MODIFYING OPINION<br>AND DENYING REHEARING;<br>NO CHANGE IN JUDGMENT |

BY THE COURT:

It is ordered that the opinion filed herein on July 18, 2023, be modified as follows:

> On page 5, the first and second sentences of the first full paragraph beginning, "Jacques moved for reconsideration of the Initial Arbitration Award.  He argued . . ." is changed to:
>
> Sametc moved for reconsideration of the Initial Arbitration Award.  It argued Arbitrator Block should allow Jacques's sale to Sametc to proceed, conditionally approved on Epstein divesting himself of any interest in Sametc and the TIC, thereby eliminating any conflict of interest.
>
> There is no change in judgment.
> The petition for rehearing is denied.

Date:  August 4, 2023                                    BROWN, P. J.

1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| SAMETC, LLC,<br><br>　　　Petitioner and Respondent,<br><br>　　　　　　　v.<br><br>TED ELMS et al.,<br><br>　　　Defendants;<br><br>REGINALD HINDLEY<br><br>　　　Appellant. | A161771<br><br>(San Francisco County Super. Ct. No. CPF-14-513720) |

In 2014, the San Francisco Superior Court issued a judgment (the 2014 Judgment) confirming an arbitration award (the 2014 Arbitration Award) that allowed respondent Sametc, LLC (Sametc) to maintain its tenant-in-common (TIC) ownership interest in certain San Francisco real property (the Property).

At the heart of this appeal is a provision in the 2014 Arbitration Award—as confirmed and incorporated in the 2014 Judgment—ordering that Sametc could maintain its TIC interest in the Property provided that Mark Epstein, a Sametc member and counsel to some of the tenants in the TIC arrangement, must withdraw from Sametc membership and not otherwise become an owner or hold a TIC interest in the Property.  Since the entry of

the 2014 Judgment, the parties have engaged in a series of disputes on a variety of matters, including whether it was appropriate several years later for Epstein to regain membership in Sametc and purchase a TIC interest in the Property.

The dispute over Epstein's ability to regain a TIC interest turns on an ambiguity in the provisions in the 2014 Judgment barring Epstein from holding an ownership interest in the Property. In the interpretation of appellant Reginald Hindley, who participated in the underlying arbitration, the bar is permanent and therefore Epstein may not hold any interests in Sametc or directly in the Property—ever. In Sametc's interpretation, the bar was temporary, and is no longer operative given the changed circumstances years later.

This appeal arises out of a Superior Court proceeding in which Hindley sought enforcement of the 2014 Judgment, arguing that Epstein "secretly" evaded what Hindley claims is permanent banishment from Sametc and any TIC ownership in the property. Rather than accept Hindley's characterization of the underlying arbitration award, the court found his motion to be procedurally defective and suggested that Sametc move for clarification of the 2014 Judgment.

Sametc took up the suggestion and filed a clarification motion (the Clarification Motion). The court ruled for Sametc in 2020, determining that the disputed language in the 2014 Judgment was a temporary bar that remained in place to guard against conflict of interest risks and other potential sources of friction arising out of extant circumstances when the 2014 Arbitration Award was rendered. The court then remanded the matter to arbitration to determine whether any such circumstances continued to exist.

Hindley's effort to enforce a permanent bar on Epstein's involvement in Sametc and TIC ownership in the Property having backfired, he now appeals from that 2020 court order on a variety of grounds, attacking the order procedurally as a threshold matter, and then attacking it on the merits as wrong. Specifically, he claims Sametc lacked standing to bring its Clarification Motion; the court lacked jurisdiction to issue its 2020 order; and finally, on the merits, the court erred in determining that the provision in the 2014 Arbitration Award putting the disputed bar in place was only temporary.

Sametc, for its part, argues that Hindley has appealed from a non-appealable order, and on the merits contends that the trial court's 2020 order was correct in all respects.

We conclude that (1) Sametc had standing to bring the Clarification Motion; (2) Hindley has appealed from an appealable order; (3) the superior court had jurisdiction to determine whether the bar contained in the 2014 Judgment is temporary or permanent; (4) and the court correctly ruled that the bar is temporary; but that (5) the court erroneously remanded the matter to an already completed arbitration proceeding.

## I. BACKGROUND

Hindley, Sametc, and Epstein are the current TIC owners of the Property, a six-unit residential building in San Francisco. This appeal stems from years of disputes between them, and others, regarding the Property. We summarize only those matters relevant to this appeal.

### A. *The 2014 Arbitration and Resulting 2014 Judgment*

In January 2014, Hindley and certain individuals who are not parties to this appeal, John Sollner, Ted Elms (and his wife Pauline), and Scott Jacques, held TIC ownership interests in the Property. They were bound by

3

a tenant-in-common agreement (TICA), pursuant to which they were required to arbitrate any dispute related to the Property that was not resolved through mediation, including any deadlock between them.

That same month, Jacques sold his ownership interest in the Property to Sametc, a limited liability company which included Epstein as one of its three members. Epstein was then a partner in a law firm, Seiler Epstein Zielger & Applegate, LLP (SEZA), which was representing some of the owners in an arbitration proceeding, as well as in lawsuits against third parties, all regarding the Property. SEZA prepared an agreement, known as the "Four-Way Agreement," that governed the acquisition and disposition of units in the Property by Solner, Ted and Pauline Elms, Jacques, and Hindley.

Hindley and Elms disapproved of Jacques's sale to Sametc, creating a deadlock. Pursuant to the arbitration clause in the TICA, the TIC owners arbitrated issues regarding that sale and other matters before JAMS arbitrator Steven Block. Hindley and Elms asserted numerous reasons for their disapproval of the sale, including potential conflicts of interest resulting from Epstein being both a member of Sametc and counsel for Property-related litigation, especially because Hindley and Elms were required to reimburse Jacques and Sollner for some of the fees incurred by SEZA in the litigation against third parties as a common expense of the TIC under the Four-Way Agreement. Hindley contended SEZA represented him because he was obligated to pay a part of this common expense.

In February 2014, Arbitrator Block, in a written ruling, ordered that Jacques's sale to Sametc was null and void, among other reasons, because a majority of the three TIC owners (Hindley and Elms) had disapproved of the sale and because it was a conflict of interest for Epstein to hold an interest in both Sametc and the TIC at that time and "in the future" (Initial Arbitration

4

Award).  According to Arbitrator Block, "SEZA is handling three aspects of the TIC's litigation needs.  SEZA is a major creditor of the TIC for past attorney's fees.  If Mr. Epstein's group [Sametc] became an owner, he would be a creditor, member of the TIC, and ongoing counsel for the TIC.  The distinct duties and responsibilities of such an owner create a real risk of causing a conflict of interest to develop."

Jacques moved for reconsideration of the Initial Arbitration Award.  He argued Arbitrator Block should allow his sale to Sametc to proceed, conditionally approved on Epstein divesting himself of any interest in Sametc and the TIC, thereby eliminating any conflict of interest.  In April 2014, Arbitrator Block granted Jacques's reconsideration motion and issued the 2014 Arbitration Award.  He approved the sale, conditioned on Epstein "divesting himself of a membership" in Sametc and not "otherwise becoming an owner or tenant in common" in the Property.  Arbitrator Block wrote: "The Arbitrator remains concerned about the participation of any principals of SEZA in the ownership of [the Property] at this time.  The Arbitrator has previously articulated the reasoning, and has no additional, [sic] facts, law, or circumstances to warrant a change in this holding.  Accordingly, the Arbitrator's decision herein to approve the sale to [Sametc] is conditioned on Mr. Epstein divesting himself from membership in [Sametc] or otherwise becoming an owner or tenant in common in [the Property]."  (Underline in the original).  He ordered, "The sale of Scott Jacques' interest in [the Property] to [Sametc], consummated on or about January 10, 2014, is hereby approved conditioned on Mr. Epstein's withdrawal from [Sametc].  The withdrawal shall be completed in 30 days, or through best efforts, whichever is sooner."

Arbitrator Block addressed other arbitration issues in another award issued shortly thereafter (Multiple Issues Arbitration Award).  In the

5

Multiple Issues Arbitration Award, he indicated that SEZA represented Jacques and Sollner only in litigation work regarding third parties.

Sametc and Sollner petitioned the San Francisco County Superior Court in case number CPF-14-513720 (CPF-14-513720) for a judgment confirming the 2014 Arbitration Award. Over opposition from Hindley and Elms, the court determined that Epstein had divested himself from Sametc, confirmed the 2014 Arbitration Award, and entered the 2014 Judgment. The court adjudged Sametc to be standing in the shoes of Jacques as the owner of his interest in the Property.

## B. *Snowden's Appointment as Arbitrator and the Restated TICA*

By 2015, Arbitrator Block had gone into government service and could no longer arbitrate disputes between the parties. That year, Hindley, Sametc, and Sollner entered into a written agreement regarding another dispute that provided in relevant part, "The Parties expressly recognize the authority of Retired Judge Scott Snowden of JAMS as the successor arbitrator for the TIC and that he has the authority to hear and resolve any and all disputes related in any way to the TICA, the Four-Way Agreement and this Agreement without further action or order of the court." Subsequently, Hindley and Sametc (as well as Sollner) became parties to a Restated TICA (Restated TICA) which acknowledged the San Francisco Superior Court had appointed Judge Snowden as arbitrator and provided that he was the "designated arbitrator for the resolution of disputes."

The Restated TICA, as does the TICA, provides, "Any dispute related to the Property which is not subject to mediation and not resolved through mediation shall be submitted to binding arbitration in accordance with the provisions of the California Civil Code and Code of Civil Procedure pertaining

6

to contract arbitration.  No such dispute shall be resolved through court action except as specifically provided by this Agreement."

## C. *The Parties' 2020 Motions Regarding the 2014 Judgment*

Sametc asserts, and Hindley does not disagree, that by 2019 the litigation SEZA had pursued against third parties was over and SEZA had been paid in full for its litigation work.

In July 2020, Hindley, in the same case in which the 2014 Judgment had been entered, CPF-14-513720, and from which this appeal has been taken, moved to enforce the 2014 Judgment against Sametc, Sollner, and Epstein (the Enforcement Motion).  He asked the court to bar Epstein from holding an interest in Sametc or the Property, which he claimed was mandated by the 2014 Judgment.

In his papers in support of the Enforcement Motion, Hindley contended Epstein secretly reacquired an ownership interest in Sametc in 2018 and thereby obtained an ownership interest in the Property in violation of the 2014 Judgment.  Hindley further contended that Sollner, having initiated an arbitration against Epstein, nonetheless entered into an undisclosed alliance with him.  He claims that, in August 2019, Sollner, Sametc, and Epstein entered into a "secret" settlement agreement which, they claimed, authorized Epstein to hold an ownership interest in Sametc and the Property.  Epstein then moved in arbitration for approval of the settlement agreement and relief from the 2014 Judgment as no longer binding because of changed circumstances.

Hindley further contended that in October 2019, over Hindley's objections, Arbitrator Snowden ruled that the 2014 Judgment was no longer binding on the parties and Epstein because circumstances had changed (2019 Arbitration Award).  Arbitrator Snowden ordered that Epstein could hold an

7

ownership interest in Sametc and the Property, and could purchase Sollner's interest in the Property. Epstein and his wife purportedly then bought Sollner's interest. Hindley petitioned the San Francisco Superior Court in another case, case number CPF-19-516917 (CPF-19-516917), to modify or vacate 2019 Arbitration Award, which petition was set for hearing on August 21, 2020 (the Motion to Modify or Vacate). He scheduled the Enforcement Motion, filed in CPF-14-513720, to be heard at the same time as the Motion to Modify or Vacate, in CPF-19-516917.

Among other things, Hindley contended in the Enforcement Motion that Arbitrator Snowden lacked jurisdiction to issue the 2019 Arbitration Award. Hindley argued that, "[i]f, as Epstein claimed and Snowden's [sic] found, there are grounds to challenge the judgment based on changed circumstances, that challenge must be made in *this Court* and can only be granted by *this Court*. (See, e.g., [Code of Civ. Proc.,] § 533 [a judgment granting injunctive relief may be modified or vacated by 'the court' on motion of a party showing that circumstances have changed since the issuance of the judgment and that the interests of justice would be served].)" Further, enforcement of the 2014 Judgment was only available in CPF-14-513720 because the court in CPF-19-516917 could only confirm, vacate, or modify Arbitrator Snowden's 2019 Arbitration Award.

Sametc, represented by Epstein, opposed Hindley's Enforcement Motion. Sametc argued the 2014 Judgment did not permanently bar Epstein from being a member of Sametc or holding an ownership interest in the Property, and noted the temporal nature of this bar already was being addressed in CPF-19-516917.

At the August 21, 2020 hearing, the court, in department 501 of the San Francisco Superior Court, took the Enforcement Motion off calendar,

8

observing that it had to be heard in another court department. It noted that department 501 was the appropriate department to consider a motion whose "objective is to either modify or clarify [the] . . . arbitration which generated [the 2014 Judgment]," but that such a motion was not before it. Epstein, on behalf of Sametc, argued it was unnecessary for the court to take further action in light of the pending Enforcement Motion in CPF-19-516917. Hindley argued the court in CPF-14-513720 had the sole authority to make an effective ruling regarding the 2014 Judgment and to deal with any motion to clarify that Sametc might file at the court's suggestion. Since the next move was for Sametc to make, the court continued the hearing in CPF-14-513720, and Sametc chose to file the Clarification Motion.

Sametc's motion, entitled a "Motion to Clarify or in the Alternative to Remand or Dissolve Injunction," argued that the plain language of Arbitrator Block's ruling indicated the bar contained in the 2014 Judgment was intended to remain only "so long as the pending litigations and the significant debt to SEZA remained outstanding." After the court clarified that point, Sametc argued, it should task Arbitrator Snowden with making limited additional findings as specified by the court, and argued Arbitrator Snowden had the necessary jurisdiction and authority to resolve the pending dispute. Should the court wish to resolve the entire matter without further arbitral findings, Sametc added, the court could take the view that the bar on Epstein's ownership in the Property constituted injunctive relief, and on that basis, dissolve the injunction under Code of Civil Procedure section 533.

Hindley opposed the Clarification Motion. He argued, based on his interpretation of Arbitrator Block's rulings and certain ethical rules that he claimed applied to Epstein's relationship with him (based on Epstein's representation of the interests of the TIC), that the bar contained in the 2014

9

Arbitration Award and 2014 Judgment is permanent. He further contended the court lacked the jurisdiction to remand the case to arbitration because the 2014 Judgment was final and that the court should deny Sametc's request for relief under Code of Civil Procedure section 533 because, among other things, the 2014 Judgment "[did] not impose injunctive relief against Epstein; it merely prohibits him from holding an interest in SAMETC and the TIC Property as a condition of approval of Jacques' sale of his interest in the Property to SAMETC."

After holding a hearing on the Clarification Motion, the superior court entered a written order in November 2020 ("2020 Court Order"). The court ruled, "Sametc's motion is granted in part and remanded in part. The Court finds that the arbitrator's decision and the judgment thereon contained a temporary bar on ownership based upon then-existing circumstances. See [2014 Arbitration Award]. This matter is remanded to the arbitrator to decide whether the same or other circumstances exist for the bar on ownership to be maintained or dissolved. These issues might have been previously addressed by the arbitrator, however, it might have been premature, and the arbitrator shall revisit, if necessary, the issues or make a determination based upon the facts as have been previously presented in light of this determination."

## D. *Hindley's Appeal*

Hindley filed a timely notice of appeal from the 2020 Court Order. We consolidated his appeal with one he brought in case number A161828, taken from a court order in CPF-19-516917 taking the petition filed in that case off of the calendar. By order dated November 24, 2021, we granted Sametc's

motion to dismiss case number A161828 (as taken from a non-appealable order), but denied its motion to dismiss this appeal.[1]

## II. DISCUSSION

Hindley and Sametc first raise standing and appealability issues, then debate the superior court's jurisdiction to issue the 2020 Court Order and the

---

[1] Four other matters collateral to the merits of this appeal are before us. First, Hindley filed a request for judicial notice on September 13, 2022, which we took under submission. He requests that we take judicial notice of two documents. The first is a printout of the docket for case number A143669, an appeal taken by Edward and Pauline Elms from CPF-14-513720 and considered by this division. Hindley contends this printout is relevant because it shows the 2014 Judgment became final in November 2015, after this division's dismissal of the Elms's appeal. We deny this request because the printout does not show the appeal was from the 2014 Judgment and, therefore, does not establish when the 2014 Judgment became final.

Second, Hindley requested that we take judicial notice of a declaration filed by attorney Phil Foster May 10, 2022, in opposition to Hindley's motion to disqualify Foster and his law firm. We denied that motion. Hindley contends that Foster's declaration is relevant both to arguments made by the parties in their appellate briefs and to his motion for sanctions, filed on September 9, 2022. We grant this request. (Evid. Code, § 452, subd. (d); Evid. Code, § 459, subd. (a); *Certain Underwriters of Lloyd's of London v. Superior Court* (2001) 24 Cal.4th 945, 955, fn. 2.)

Third, on October 18, 2022, after we ordered that no further briefing would be allowed without our permission, Hindley's counsel submitted a letter requesting that we permit the filing of that letter, which addressed points made in Sametc's supplemental brief, filed on October 17, 2022. We hereby grant Hindley's request.

Fourth, as we have indicated, on September 9, 2022, Hindley filed a motion for sanctions against Sametc, Epstein, Foster and Foster's law firm, Tour-Sarkissian Law Offices, LLP, on a variety of grounds. We deny this motion.

merits of its ruling that the bar contained in the 2014 Judgment is temporary. We address these issues one at a time.[2]

## A. *Standing*

Hindley first argues we should reverse the 2020 Court Order because Sametc did not have standing to bring its Clarification Motion. Hindley, relying on cases that sort through derivative and individual claims involving limited liability companies and corporations (i.e., *PacLink Communications Internat., Inc. v. Superior Court* (2001) 90 Cal.App.4th 958, 963, 965; *Nelson v. Anderson* (1999) 72 Cal.App.4th 111, 124; *Sutter v. General Petroleum Corp.* (1946) 28 Cal.2d 525, 530), contends Sametc lacked standing because its motion was for the benefit of Epstein and not Sametc. According to Hindley, "Epstein [who filed the motion on behalf of Sametc] has improperly used Plaintiff SAMETC as his Trojan Horse to sneak passed [sic] the 'standing'-gate and into the courthouse to seek and secure relief for *Epstein*."

---

[2] In his opening brief, Hindley contends that we should vacate the superior court's order remanding this matter so that Arbitrator Snowden may "*newly* 'decide whether the same or other circumstances exist for the bar on ownership to be maintained or dissolved.'" Hindley apparently intends this argument to apply to a remand in CPF-14-513720, the case from which this appeal has been taken. Sametc, at least in part in response to this argument, contends at great length in its respondent's brief that Arbitrator Snowden had jurisdiction to issue the 2019 Arbitration Award, that we should defer to Arbitrator Snowden's determination in that arbitration that the dispute between the parties could not be heard by the superior court based on the parties' arbitration agreement, and that Hindley was not entitled below to an order vacating the 2019 Arbitration Award. These issues are not before us in this appeal and, therefore, we do not consider them further. We also have no need to, and so do not, consider the merits of the 2019 Arbitration Award or the record filed in appeal A161828.

12

Hindley's standing claim lacks merit. "A shareholder's derivative suit seeks to recover for the benefit of the corporation and its whole body of shareholders when injury is caused to the corporation that may not otherwise be redressed because of failure of the corporation to act." (*Jones v. H. F. Ahmanson & Co.* (1969) 1 Cal.3d 93, 106.) This principle applies to a limited liability company. (*PacLink Communications Intern., Inc. v. Superior Court*, *supra*, 90 Cal.App.4th at p. 963.) A limited liability company, like Sametc, has a legal existence separate from its members. (*Ibid.*)

Sametc was one of the petitioners that sought confirmation of the 2014 Arbitration Award and was subject to the 2014 Judgment. The subject of its Clarification Motion was that 2014 Judgment placed limiting conditions on Sametc's maintenance of a TIC ownership interest in the Property, including a bar on Sametc holding that interest while Epstein was a Sametc member or otherwise held an interest in the Property. The issues debated by the parties in the proceeding below included whether this bar is temporary or permanent.

Further, Sametc's beneficial interest is actual and concrete, not hypothetical. Hindley initiated the latest round of motions below after Epstein, as stated by Hindley in a declaration, "secretly reacquire[d] an ownership interest in SAMETC without knowledge and consent of the Court or co-owners of the Property, Hindley and Sollner." According to Hindley, Sollner commenced an arbitration in 2019 against Sametc and then entered into a confidential settlement agreement with Epstein and Sametc, and the arbitrator approved Epstein's holding of an ownership interest in the Property. Hindley moved the court "to enforce the [2014 Judgment] against Sollner, SAMETC and Epstein by issuing an order requiring Epstein to immediately divest from SAMETC, and the Property, and requiring Epstein

13

and his wife Janet to return Sollner's interest in the Property which they now hold." At the very least, a superior court ruling regarding whether the 2014 Judgment allowed Sametc to continue to hold a TIC ownership interest in the Property if Epstein is a member of it or a TIC owner of the Property could concretely affect the conditions under which Sametc might be allowed to continue to maintain that ownership interest. Under these circumstances, Sametc had standing to bring its Clarification Motion.

## B. *Appealability*

Sametc argues we should dismiss Hindley's appeal without reviewing its merits because (1) it is from an order that is not appealable under Code of Civil Procedure section 1294 and (2) Hindley has waived his right to appeal. Hindley argues the order is appealable as an order after final judgment under Code of Civil Procedure sections 904.1, subdivision (a)(2) and 1294, subdivision (e).

### 1. *The 2020 Court Order Is Appealable*

As we will further discuss, this is an appeal from a postjudgment court order which includes the clarification of a de facto injunction. Two different but related statutes are implicated in this circumstance.

Code of Civil Procedure section 904.1 " 'govern[s] appeals in civil proceedings generally.' " (*Fleur du Lac Estates Association v. Mansouri* (2012) 205 Cal.App.4th 249, 255.) Section 904.1, subdivision (a)(2) provides that an appeal may be taken from "an order made after a judgment" that is itself appealable.

Code of Civil Procedure section 1294, subdivision (e), which governs orders issued after a judgment confirming an arbitration award, provides that an aggrieved party in an arbitration may appeal from a "special" order after final judgment. (*Lovret v. Seyfarth* (1972) 22 Cal.App.3d 841, 851–852.)

14

"[C]ourts have looked to cases interpreting [Code of Civil Procedure] section 904.1 for guidance in interpreting [Code of Civil Procedure] section 1294." (*Otay River Constructors v. San Diego Expressway* (2008) 158 Cal.App.4th 796, 802.) Our Supreme Court has held that to be appealable under section 904.1, subdivision (a)(2) as an order after an appealable judgment, "the order must either affect the judgment or relate to it by enforcing it or relate to it by enforcing it or staying its execution." (*Olson v. Cory* (1983) 35 Cal.3d 390, 400 (*Olson*).) Further, "the issues raised by the appeal from the order must be different from those arising from an appeal from the judgment." (*Lakin v. Watkins Associated Industries* (1993) 6 Cal.4th 644, 651 (*Lakin*).)

The circumstances presented here are unusual because they may fall under either or both of Code of Civil Procedure sections 904.1, subdivision (a)(2) and 1294, subdivision (e). But we need not determine whether one applies over the other because the 2020 Court Order is appealable under either provision. As we explain below, because the court's 2014 Judgment includes a de facto injunction, the superior court had jurisdiction to clarify the terms of the injunction. Whether the 2020 Court Order is considered to be a postjudgment order clarifying the injunction (Code Civ. Proc., § 904.1, subd. (a)(2)) or a clarification of a judgment confirming the 2014 Arbitration Award (*id.*, § 1294, subd. (e)), it is appealable. The 2020 Court Order also raises issues different from those that might have arisen from an appeal of the 2014 Judgment and clarifies that Judgment. It is appealable on that ground as well. (See *City of Santa Maria v. Adam* (2019) 43 Cal.App.5th 152, 161 [postjudgment order denying motion to clarify an amended judgment was

15

an appealable order, as it "affect[ed] the amended judgment because it relate[d] to its scope; thus, it relate[d] to its enforcement"].)[3]

Sametc argues the 2020 Court Order does not "affect" the 2014 Judgment because it "merely remands" the matter back to arbitration. This is incorrect. The 2020 Court Order does more than that. It first determines that the 2014 Judgment included a temporary, not a permanent, bar, a clarification that falls within its authority to enforce the 2014 Judgment; it only then remands the matter to arbitration to address whether the conditions that led to that temporary bar have ended.

Sametc also argues that we cannot consider this appeal because of the limits on judicial review of arbitrator awards stated by the Supreme Court in *Moncharsh v. Heily & Blase* (1992) 3 Cal.4th 1 (*Moncharsh*) as follows: "[I]t is the general rule that, 'The merits of the controversy between the parties are not subject to judicial review.' [Citations.] More specifically, courts will not review the validity of the arbitrator's reasoning. [Citations.] Further, a court may not review the sufficiency of the evidence supporting an arbitrator's award. [Citations.] [¶] Thus, it is the general rule that, with narrow exceptions, an arbitrator's decision cannot be reviewed for errors of fact or law." (*Id.* at p. 11.) We are not persuaded. The superior court did none of these things in the 2020 Court Order.

Sametc further argues the 2020 Court Order does not meet the criteria established by our Supreme Court in *Moncharsh* because it involves the same issues as will be addressed by the trial court's final order in CPF-19-516917

---

[3] Hindley argues the 2020 Court Order is also appealable under Code of Civil Procedure section 904.1, subdivision (a)(6), which authorizes an appeal "[f]rom an order granting or dissolving an injunction, or refusing to grant or dissolve an injunction." We disagree because the 2020 Court Order neither granted nor dissolved any injunctive relief.

16

(the appeal from which we have dismissed). According to Sametc, because the issues in the two cases are the same—whether the 2014 Judgment includes a temporary or permanent bar—and will ultimately be the subject of an appeal from CPF-19-516917—"this appeal is premature and not authorized by CCP § 1294." *Moncharsh* deals with a petition to vacate or modify an arbitration award, which is not what we have here. Courts have no authority under Code of Civil Procedure section 1286.2 to sit in review of arbitral decisionmaking, but once an arbitrator's award is confirmed and reduced to judgment, courts may interpret the meaning and scope of their own judgments, and an order doing so is appealable as a post-judgment order under Code of Civil Procedure section 904.1.

Sametc argues, finally, that the 2020 Court Order is not final because it orders "remand" to arbitration to determine whether the conditions that led to the temporary bar continue to exist or have ended. Despite the unqualified language contained in Code of Civil Procedure section 904.1, not all orders issued after an appealable judgment are themselves appealable. "Some postjudgment orders are not appealable because, 'although following an earlier judgment, [they] are more accurately understood as being preliminary to a later judgment, at which time they will be ripe for appeal. [¶] . . . [¶] [Such postjudgment orders lack] finality in that they [are] also preparatory to later proceedings. ([*Lakins v. Watkins Associated Industries* (1993)] 6 Cal.4th [644,] 652, 653)." (*In re Marriage of Ellis* (2002) 101 Cal.App.4th 400, 403.) Further, under Code of Civil Procedure section 1294, "[a]n intermediate ruling in an arbitration dispute that contemplates further proceedings *in arbitration* is not appealable." (*Vivid Video, Inc. v. Playboy Entertainment Group, Inc.* (2007) 147 Cal.App.4th 434, 442.)

17

Putting aside for a moment whether the "remand" order was erroneous—an issue we address below (*post*, Part II.C.2)—this line of argument ignores the most critical part of the 2020 Court Order—its clarification that the bar contained in the 2014 Judgment is temporary. That aspect of the order is final; the "remand" is limited to determining whether the temporary bar should be lifted, *not* whether the bar could be interpreted as permanent. Indeed, were we to conclude the bar is permanent, there would be no need for remand. Sametc's argument is unpersuasive to the extent it attacks the court's clarification that the bar is temporary, because that determination *is* a final determination. And given the appealability of the court's order of clarification, Hindley fails to meet his burden as appellant of showing why we cannot also address the remand order itself. (*Conservatorship of Maria B.* (2013) 218 Cal.App.4th 514, 532–533 [appellant bears the burden to make affirmative showing that the trial court committed prejudicial error].)[4]

*2. Hindley Has Not Waived His Right To Appeal*

Sametc next argues Hindley has waived his right to appeal based on provisions contained in the TICA and the Restated TICA. Specifically, the TICA, pursuant to which the 2014 arbitration occurred, states in bold capital letters: "**YOU ARE AGREEING TO HAVE ANY MATTER ARISING**

_____

[4] To the extent it might be argued that the part of the 2020 Court Order remanding the matter to arbitration is an unappealable interlocutory order, we would exercise our discretion to treat that part of the appeal as a de facto writ petition. (See, e.g., *Olson*, *supra*, 35 Cal.3d at p. 400 [treating appeal from a non-appealable order as writ proceeding because to do otherwise "might lead to unnecessary trial proceedings"]; *Coronado Police Officers Assn. v. Carroll* (2003) 106 Cal.App.4th 1001, 1006 [treating appeal from non-appealable order as writ proceeding where the briefs and record were sufficient for writ review and dismissal "would not further judicial economy"].)

**OUT OF THE 'ARIBTRATION' PROVISION DECIDED BY NEUTRAL ARBITRATION AS PROVIDED BY CALIFORNIA LAW AND YOU ARE GIVING UP ANY RIGHTS YOU MIGHT POSSESS TO HAVE THE DISPUTE LITIGATED IN A COURT OR JURY TRIAL. YOU ARE ALSO GIVING UP YOUR JUDICIAL RIGHTS TO DISCOVERY AND APPEAL, UNLESS SUCH RIGHTS ARE SPECIFICALLY INCLUDED IN THE 'ARBITRATION' PROVISION.**" The Restated TICA contains the same provision.

As Sametc correctly points out, "California courts enforce contractual provisions waiving a party's right to appeal a judgment on an arbitration award" "if this intent is 'clear and explicit.' " (*Emerald Aero, LLC v. Kaplan* (2017) 9 Cal.App.5th 1125, 1144 (*Emerald*).) But as Hindley points out, the only case cited by Sametc, *Emerald*, supports *Hindley's* position that he has not waived his right to appeal in this circumstance.

At issue in *Emerald* was a provision of the parties' arbitration agreement very similar to the provision we consider here. The *Emerald* provision stated that the parties were " 'GIVING UP ANY RIGHTS [THEY] MIGHT POSSESS TO HAVE THE DISPUTE LITIGATED IN A COURT OR JURY TRIAL. BY EXECUTING THIS AGREEMENT, EACH PARTY HERETO IS GIVING UP ITS OR HIS JUDICIAL RIGHTS TO DISCOVERY AND APPEAL.' " (*Emerald, supra*, 9 Cal.App.5th at p. 1144.) The appellate court held that, "[r]easonably read, the cited language of the parties' arbitration agreement does not show [the appealing party] waived his right to appeal on the limited judicial review grounds provided in the arbitration statutes. . . . Although the parties unambiguously gave up their rights to litigate the matter in a judicial forum, including their *judicial* appellate rights, they did not explicitly waive their rights to the limited judicial review

19

provided under the arbitration statutes, which encompass the right to appeal a final judgment on these matters. (See [Code Civ. Proc.,] § 1294.) The waiver of '*judicial rights* to discovery and appeal' is not sufficiently specific to waive the right to challenge a judgment confirming an arbitration award. (Capitalization omitted & italics added; see *Guseinov*[ *v. Burns* (2006)] 145 Cal.App.4th [944,] 952–955 [no explicit waiver of appellate rights to challenge judgment on arbitration award where parties agreed only to ' "waive any right to appeal the arbitral award" ']; *Reisman v. Shahverdian* (1984) 153 Cal.App.3d 1074, 1082, 1088–1089 (*Reisman*) [no waiver of appellate rights to challenge judgment confirming arbitration award under agreement that ' "once the arbitrators have rendered an award, no appeal or further proceeding will be possible" '].)" (*Id.* at pp. 1144–1145.) The *Emerald* court further concluded that, since the parties agreed to have their dispute " 'decided by neutral arbitration as *provided under applicable law*,' " and since "[a]pplicable law provides for limited judicial review of arbitration awards through the statutory confirmation/vacation procedures, and for the right to appeal the ensuing judgment," then "the parties manifested their understanding that they had retained their appellate rights to challenge the final judgment." (*Id.* at p. 1145.)

The waiver provision that Sametc cites here is so similar to that discussed in *Emerald* as to be indistinguishable in its relevant parts, and it is similarly too general a statement to constitute a waiver of the appellate right at issue here. Further, the parties, similar to the parties in *Emerald*, agreed here to have their dispute decided "**DECIDED BY NEUTRAL ARBITRATION AS PROVIDED BY CALIFORNIA LAW**," manifesting their understanding that they retained their appellate rights to challenge the final judgment. Given these circumstances, we conclude Sametc has failed to

20

show that Hindley waived his right to appeal the 2020 Court Order. As we explain below, post-arbitration clarification of an injunctive provision in an arbitration award, once the award is confirmed—at which point that aspect of the award is tantamount to a judicially issued injunction, since it can only be enforced judicially—is provided by California law. It is not a substitute for the underlying arbitration.

## C. *Jurisdictional and Merits Arguments*

Hindley argues the superior court erred in issuing its 2020 Court Order because the superior court (1) lacked jurisdiction to clarify the 2014 Judgment and in any event wrongly determined that it contains a temporary rather than a permanent bar; and (2) lacked jurisdiction to remand the matter to the arbitrator to "to decide whether the same or other circumstances exist for the bar on ownership to be maintained or dissolved." We separately consider these arguments.

### 1. *The Court's Clarification of the Temporal Nature of the 2014 Judgment*

#### a. The Court Had the Jurisdiction To Clarify That the 2014 Judgment Bar Is Temporary

First, citing law largely about the "one final judgment" rule, Hindley argues the superior court lacked fundamental jurisdiction to issue the 2020 Court Order because after the 2014 Judgment became final, the court could not "consider whether changed circumstances might require a different result if the matter could be revis[i]ted anew." (See, e.g., *Griset v. Fair Political Practices Com.* (2001) 25 Cal.4th 688, 701 [after affirmance of a superior court judgment, "the superior court did not have the jurisdiction to reopen or retry the case" and, therefore, "the superior court's later judgment was void insofar as it encompassed or rested upon a redetermination of the merits of the litigation"]; *People v. Berg* (2019) 34 Cal.App.5th 856, 860–861 [trial court

lacked jurisdiction to vacate a prior order granting habeas relief based on a later change of law]; *People v. DeLouize* (2004) 32 Cal.4th 1223, 1232 ["judgments are deemed final in the superior court, and not subject to reconsideration by that court"]; see also *Cal Sierra Development Inc. v. George Reed, Inc.* (2017) 14 Cal.App.5th 663, 678 ["A judgment confirming the arbitration award constitutes a final judgment on the merits"].)  Thus, Hindley contends, "as a matter of law and jurisdiction [this] Court should vacate" the 2020 Court Order.

We disagree.  Hindley complains that the court modified the 2014 Judgment on the mistaken premise that the bar placed by the arbitrator on Epstein's TIC ownership is temporary.  But the court did no such thing.  Rather, it recognized that the arbitration award left that issue ambiguous and *clarified* that, as judicially construed, the 2014 Judgment contained a temporary, not a permanent, bar.  We conclude that the court had fundamental jurisdiction to clarify the 2014 Judgment in this way, particularly given the equitable nature of the relief contained in the judgment.

"If an [arbitration] award is confirmed, judgment shall be entered in conformity therewith.  The judgment so entered has the same force and effect as, and is subject to all the provisions of law relating to, a judgment in a civil action of the same jurisdictional classification; and it may be enforced like any other judgment of the court in which it is entered, in an action of the same jurisdictional classification."  (Code Civ. Proc., § 1287.4.)

Ordinarily, a superior court's " 'jurisdiction over the parties and the subject matter . . . continues until a final judgment is entered . . . .' " (*Diamond Heights Village Assn., Inc. v. Financial Freedom Senior Funding Corp* (2011) 196 Cal.App.4th 290, 305, italics omitted.)  That is, "[a] final

judgment terminates the litigation between the parties and leaves nothing in the nature of judicial action to be done other than questions of enforcement and compliance." (*Ramon v. Aero. Corp.* (1996) 50 Cal.App.4th 1233, 1237; see *Olson*, *supra*, 35 Cal.3d at p. 399 [" 'it may be said that where no issue is left for future consideration except the fact of compliance or noncompliance with the terms of the . . . decree, that decree is final' "].)

Sametc asserts the 2014 Judgment, by confirming the 2014 Arbitration Award, included within it what was in effect an injunction, i.e., Sametc could proceed as a TIC owner of the Property provided that it did not include Epstein as one of its members and he did not otherwise become a TIC owner of the Property. As one court has explained, "What . . . is the nature of injunctive relief? An injunction . . . may be . . . defined as a writ or order commanding a person either to perform or to refrain from performing a particular act." (*McDowell v. Watson* (1997) 59 Cal.App.4th 1155, 1160.) Further, an appellate court may consider a decree as including injunctive relief regardless of how it is identified in the decree, as this division has done in the past. (See *Northpoint Homeowners Assn. v. Superior Court* (1979) 95 Cal.App.3d 241, 245 [agreeing with petitioner that a protective order was " 'in effect, an injunction . . .' "].)

We agree with Sametc that the 2014 Judgment included injunctive relief. Whether labeled an injunction or not, the judgment only allowed Sametc to proceed as a TIC owner of the Property without Epstein as one of its members and provided he did not obtain a TIC ownership interest in the Property. Once Epstein withdrew from Sametc, this was, in effect, a prohibitory injunction, which in turn presents the central issue of the parties now dispute: Whether this injunction is temporary or permanent. Because the trial court was dealing with its own injunctive order, we believe it had

postjudgment jurisdiction to clarify the temporal nature of the equitable relief it had provided.

A court sitting in equity, as is the case when it issues an injunction (see, e.g., *Vanderpol v. Starr* (2011) 194 Cal.App.4th 385, 388 [noting "[t]he trial court, sitting in equity, issued the injunction"]), has the power to exercise postjudgment jurisdiction in order to determine issues regarding the judgment, such as the judgment's interpretation. (See, e.g., *Dawson v. East Side Union High School Dist.* (1994) 28 Cal.App.4th 998, 1044–1045 ["retention of jurisdiction by the court for the purpose of interpreting and enforcing its judgment is within the scope of declaratory relief"]; *Rynsburger v. Dairymen's Fertilizer Cooperative, Inc.* (1968) 266 Cal.App.2d 269, 278–279 [court retaining jurisdiction in equity "may . . . make such orders as are necessary . . . to prevent impairment of its judgment . . . and to make a complete adjudication of the controversy"].) " 'The jurisdiction of a court of equity to enforce its decrees is coextensive with its jurisdiction to determine the rights of the parties, and it has power to enforce its decrees as a necessary incident to its jurisdiction. Except where the decree is self-executing, jurisdiction of the cause continues for this purpose . . . .' " (*Balboa Island Village Inn, Inc. v. Lemen* (2007) 40 Cal.4th 1141, 1161, quoting *Klinker v. Klinker* (1955) 132 Cal.App.2d 687, 694.) " 'Where equity has acquired jurisdiction for one purpose, it will retain that jurisdiction to the final adjudgment of all differences between the parties arising from the causes of action alleged. [Citations.] Where a court has taken jurisdiction of a suit in equity it may determine all legal as well as equitable issues in order to completely dispose of the matters in controversy.' " (*Day v. Sharp* (1975) 50 Cal.App.3d 904, 912–913, quoting *Klinker v. Klinker, supra,* 132 Cal.App.2d at p. 694.)

A court sitting in equity may even exercise this authority with regard to a permanent injunction under the proper circumstances. "It is settled that where there has been a change in the controlling facts upon which a permanent injunction was granted, or the law has been changed, modified or extended, or where the ends of justice would be served by modification or dissolution, the court has the inherent power to vacate or modify an injunction where the circumstances and situation of the parties have so changed as to render such action just and equitable. (*Sontag Chain Stores Co. v. Superior Court* (1941) 18 Cal.2d 92, 94–95; *Union Interchange, Inc. v. Savage* (1959) 52 Cal.2d 601, 604; *Palo Alto-Menlo Park Yellow Cab Co. v. Santa Clara County Transit Dist.* (1976) 65 Cal.App.3d 121, 130; *Brunzell Constr. Co. v. Harrah's Club* (1966) 253 Cal.App.2d 764, 772.)" (*Welsch v. Goswick* (1982) 130 Cal.App.3d 398, 404.)

Further, "[a]n equity court has inherent power to make its decree effective by additional orders affecting the details of performance, *irrespective of reservation of power in the decree.*" (*Barnes v. Chamberlain (*1983) 147 Cal.App.3d 762, 767 (italics added), followed in *Gold v. Gold* (2003) 114 Cal.App.4th 791, 806–807 and *Palmco Corp. v. Superior Court* (1993) 16 Cal.App.4th 221, 225; see also *Lesser & Son v. Seymour* (1950) 35 Cal.2d 494, 500 ["the principles and compelling necessities of a case like we have here require the reservation of such power [to change the manner of a sale of property from that specified in the decree] without stating it in the decree"].)

Hindley offers two reasons why we should reject Sametc's argument that the 2014 Judgment includes injunctive relief (which relief he incorrectly characterizes as regarding Epstein alone). First, he argues that Sametc has forfeited this argument by raising it for the first time in this appeal. He contends Sametc did not assert it in the 2014 arbitration or the superior

25

court proceeding that followed, and notes that Sametc specifically represented to the court at that time that Epstein had completely divested from Sametc, which divestment was " 'consummated and final.' " (Bold omitted.) Hindley further contends Sametc is estopped from claiming the 2014 Judgment imposed an injunction because it told the superior court the opposite—that the judgment did not include injunctive relief.

Hindley's forfeiture and estoppel arguments lack merit because Sametc timely made its injunctive relief argument to the superior court in its Clarification Motion (entitled, "Motion to Clarify or in the Alternative Remand or Dissolve *Injunction*" (italics added)). Sametc urged the trial court to allow the temporal nature of the 2014 Judgment to be resolved in the arbitration before Arbitrator Snowden. Sametc, noting that Hindley had cited in his court papers Code of Civil Procedure section 533, the statute that authorizes courts to modify or dissolve an injunction[5], asserted that relief under section 533 "is not required in this Action."

But Sametc did not stop there. It then argued, "But should the Court believe any part of the [2014] Judgment of confirmed [2014 Arbitration Award] constitutes injunctive relief modifiable by the Court, the referenced statute does grant the Court, the 'inherent power to vacate or modify an injunction' in the event there has been a 'change in controlling facts' or where the 'ends of justice would be served by modification or dissolution.' (*Welsch v. Goswick*, *supra*, 130 Cal.App.3d 398; *Woods v. Corsey* (1948) 89 Cal.App.2d

---

[5] Code of Civil Procedure section 533 states, "In any action, the court may on notice modify or dissolve an injunction or temporary restraining order upon a showing that there has been a material change in the facts upon which the injunction or temporary restraining order was granted, that the law upon which the injunction or temporary restraining order was granted has changed, or that the ends of justice would be served by the modification or dissolution of the injunction or temporary restraining order."

105.) Since the material facts relating to the potential conflicts of interest identified by Arbitrator Block no longer exist[], section 533 could be utilized to dissolve any perceived injunctive action. Accordingly, Sametc seeks such relief if the Court believes the statute is applicable and necessary to grant the requested relief." This argument was sufficient to preserve Sametc's contention that the prohibitory language in the 2014 Judgment—which derives from the 2014 Arbitration Award—qualifies as injunctive relief, subject to modification or dissolution under the usual rules applicable to judgments. (See *Sontag Chain Stores Co., Ltd. v. Superior Court*, supra, 18 Cal.2d at pp. 94–95.)

Further, even if Sametc had not timely raised its injunctive relief argument below and was thereby vulnerable to a forfeiture claim, we would have the discretion to address the argument. (*People v. Williams* (1998) 17 Cal.4th 148, 161, fn. 6 ["An appellate court is generally not prohibited from reaching a question that has not been preserved for review by a party"].) We would choose to exercise it in that circumstance because the superior court's 2020 Court Order itself states, "This matter is remanded to the arbitrator to decide whether the same or other circumstances exist for the bar on ownership to be maintained or *dissolved*." (Italics added.) This reference to dissolution strongly suggests the superior court itself concluded that the 2014 Judgment contains injunctive relief, all but requiring that we consider the issue on appeal.

Second, Hindley argues in a supplemental letter to this court that we should reject Sametc's contention that the 2014 Judgment includes injunctive relief because the TICA, pursuant to which the parties brought their dispute before Arbitrator Block, states that claims for injunctive relief are not subject to arbitration. Specifically, section 14.4 of the TIC states, "The following

27

matters are excluded from the requirement of mandatory binding arbitration, but not from mediation." It then lists among the excluded matters, "An action to record a notice of pending action, or for an order of attachment, receivership, *injunction or other provisional remedy* which action shall not constitute a waiver of the right to compel arbitration." (Italics added.) Thus, Hindley contends, "Block did **NOT** have authority to grant injunctive relief" in his 2014 Arbitration Award, which was confirmed by the [2014 Judgment]. And it is also clear "those arbitral and judicial orders did **NOT** impose injunctive relief against Plaintiffs' Counsel Epstein."[6] Therefore, the court did not have the authority to issue its 2020 Court Order.

This argument is also unpersuasive. We apply ordinary rules of contract interpretation to our interpretation of arbitration agreements. (*Hotels Nevada, LLC v. Bridge Banc, LLC* (2005) 130 Cal.App.4th 1431, 1435.) Section 14.4 of the TIC, by its plain meaning, only relates to what matters *must be* submitted to binding arbitration; it has nothing to do with what the parties *may* submit to arbitration. Moreover, even assuming there was some contractual bar on arbitral power to issue injunctive relief, the time to raise that issue and police the boundaries of Arbitrator Block's remedial authority was 2014, when Sametc petitioned to confirm the 2014 Arbitration Award. But presumably because the prohibition on Epstein regaining

---

[6] Hindley also contends the Restated TICA contains this same exclusion and, therefore, (1) Arbitrator Snowden did not have authority to modify or vacate an injunction in CPF-19-516917 and (2) the superior court in CPF-14-513720 did not have the authority to remand this matter to the arbitrator. As we discuss in footnote 2, *ante*, we do not address any issues in CPF-19-516917 or the underlying arbitration. We address that part of the superior court's 2020 Court Order remanding the matter to the arbitrator in section C.2, *post*.

ownership in the property benefited Hindley at that time, he did not raise the issue. Whatever the reason, however, he stood mute and will not be heard now to contend that the 2014 Arbitration Award was beyond Arbitrator Block's authority.[7] The appeal here is from a trial court judgment entered following confirmation of an arbitration award. It is undisputed that a trial court has jurisdiction to order injunctive relief, and to interpret and clarify the scope of its own judgment during the course of enforcement proceedings on that judgment.

### b. The Superior Court Correctly Ruled the Bar Included in the 2014 Judgment Is Temporary

The superior court's 2020 Court Order states, "The Court finds that the arbitrator's decision and the [2014] judgment thereon contained a temporary bar on ownership based upon then-existing circumstances." Hindley urges us to reverse this ruling and conclude the 2014 Judgment contains a permanent bar.

Hindley did not present an analysis in his opening brief that directly challenges the substance of the superior court's temporary bar finding. He did provide such an analysis in his reply brief. Normally we would ignore this analysis as tardily made. (See, e.g., *People v. Taylor* (2020) 43 Cal.App.5th 1102, 1114 [arguments raised for the first time in a reply brief are forfeited].) But we granted Sametc's request to address Hindley's new arguments in his reply brief in supplemental briefing, so Sametc has had

---

[7] Hindley opposed confirmation of the 2014 Arbitration Award principally on the grounds it was not a final award; the conditions established for Epstein's divestment from Sametc had not been satisfied; and disputes with Sametc arising under the Four-Way Agreement were not arbitrable. He made no mention of Arbitrator Block lacking authority to bar Epstein from an ownership in the Property or to issue any particular kind of relief.

29

an opportunity to respond to this new set of arguments.  We will therefore address the merits of the permanent bar arguments in Hindley's reply brief.

"The same rules apply in ascertaining the meaning of a court order or judgment as in ascertaining the meaning of any other writing.  [Citation.] 'The interpretation of the effect of a judgment is a question of law within the ambit of the appellate court.' " (*Mendly v. County of Los Angeles* (1994) 23 Cal.App.4th 1193, 1205.)  Generally, "[t]he language of a [writing] is to govern its interpretation, if the language is clear and explicit, and does not involve an absurdity." (Civ. Code, § 1638.)  Further, when interpreting judgments, " 'the entire record may be examined to determine their scope and effect . . . .' [Citation.] 'Individual clauses or provisions of a judgment, just as in a contract or any other document, are not to be separately considered and construed but, on the contrary, the entire document is to be taken by its four corners and construed as a whole to effectuate the obvious intention.' " (*Dow v. Lassen Irrigation Co.* (2013) 216 Cal.App.4th 766, 780–781.)  " 'If the language of the order be in any degree uncertain, then reference may be had to the circumstances surrounding, and the court's intention in the making of the same.' " (*In re Ins. Installment Fee Cases* (2012) 211 Cal.App.4th 1395, 1429–1430.)  The same interpretive rules apply to arbitration awards. (*Los Angeles Local Joint Executive Board of Culinary Workers & Bartenders v. Stan's Drive-Ins, Inc.* (1955) 136 Cal.App.2d 89, 94.)

In support of his argument that the 2014 Judgment contains a permanent bar, Hindley contends the judgment confirmed an award—the 2014 Arbitration Award—which by its terms indicates Arbitrator Block was very concerned about the potential future conflicts of interest that could stem from Epstein both holding an ownership interest in the Property (including via Sametc) and being a partner in SEZA with duties to Hindley, even if

30

Hindley was a non-client, because he was a beneficiary of SEZA's work, both during and after SEZA completed this legal work. In support of this contention, Hindley extensively outlines the ethical rules that he argues governs the duties an attorney such as Epstein owes to clients and non-clients who mutually benefit from the attorney's work, both during and after the completion of that work. Hindley fails to demonstrate how any of these ethical rules prohibit Epstein from currently being a member of Sametc since the litigation SEZA had pursued against third parties is over and SEZA has been paid for its litigation work. Without such a showing, we decline to find a breach by Epstein of any duty to a former client or to others affected by his work on behalf of such a client. Arbitrator Block, in any event, did not rely on the analysis of attorney ethics Hindley proposes.

Arbitrator Block's 2014 rulings, to be sure, do indicate he was concerned about certain potential conflicts of interest that could stem from Epstein both holding an ownership interest in the Property and being a partner in SEZA. As we have discussed, in the 2014 Arbitration Award, Arbitrator Block ruled: "The Arbitrator remains concerned about the participation of any principals of SEZA in the ownership of [the Property] at this time. The Arbitrator has previously articulated the reasoning [in the Initial Arbitration Award], and has no additional, [sic] facts, law, or circumstances to warrant a change in this holding. Accordingly, the Arbitrator's decision herein to approve the sale to [Sametc] is <u>conditioned on Mr. Epstein divesting himself of a membership in [Sametc] or otherwise becoming an owner or tenant in common in [the Property]</u>." (Underline in the original).

The parties debate at length whether this paragraph and the concerns Arbitrator Block articulated in the Initial Arbitration Award indicate his

31

intention to impose a temporary or permanent bar. A focal point of disagreement between them is the meaning of the phrase "at this time" in the paragraph we have quoted directly above. Sametc argues Arbitrator Block's use of this phrase shows his concerns with potential conflicts of interest were based on the circumstances that existed "at this time," i.e., at the time of his 2014 ruling, as were the concerns he articulated in the Initial Arbitration Award, showing Block intended to impose a bar only so long as those circumstances continued. Hindley, on the other hand, argues Arbitrator Block's use of the phrase "at this time" was merely a reference to the concerns he had at the time he issued his ruling, and that the concerns he previously articulated in the Initial Arbitration Award were of a permanent nature.

There are two reasons why it is more likely than not that, as Sametc contends, Arbitrator Block intended the phrase "at this time" to refer to the circumstances that existed at the time of his rulings. First, under the longstanding " 'last antecedent rule' " of statutory construction, " ' "qualifying words, phrases and clauses are to be applied to the words or phrases immediately preceding and are not to be construed as extending to or including others more remote." ' " (*Renee J. v. Superior Court* (2001) 26 Cal.4th 735, 743, superseded by statute on another ground as stated in *Renee J. v. Superior Court* (2002) 96 Cal.App.4th 1450, 1457–1458, quoting *White v. County of Sacramento* (1982) 31 Cal.3d 676, 680; quoted approvingly in *Yahoo Inc. v. National Union Fire Ins. Co. etc.* (2022) 14 Cal.5th 58, 73–74.) "At this time" is immediately preceded by the phrase "concerned about the participation of any principals of SEZA in the ownership of [the Property]," indicating it was intended to apply that phrase, and indicating those concerns were not necessary of a permanent nature.

Second, if the phrase "at this time" was intended as a reference only to Arbitrator Block's concerns as of the date he issued his ruling, it would be somewhat redundant of the phrase earlier in the same sentence that he "remains concerned" about the participation of any of the principals of SEZA in the Property. And even then, if Arbitrator Block intended to say he "remained concerned" "at this time" about certain conflicts of interest, it would suggest his concerns were of a potentially temporary nature.

We need not determine whether Arbitrator Block intended the bar to be temporary or permanent based on this paragraph alone, however, because, as the parties acknowledge, Arbitrator Block articulated his concerns at length in the Initial Arbitration Award and incorporated them by reference into his 2014 Arbitration Award. In the Initial Arbitration Award (which Arbitrator Block withdrew in favor of the 2014 Arbitration Award), he wrote, "Unfortunately, the current communication among the Cotenants has become toxic." Further, "[i]t remains questionable whether the existing cotenants can achieve the interaction required for the TIC to succeed and surmount ongoing challenges with the depth of the complaint and visceral reaction to the proposed transferees." Arbitrator Block continued:

"Aside from the efficacy of the substitution of [Sametc] for Jacques, the practical impact of one of the TIC's lawyers, [sic] being an owner risks further protracted angst, argument and potential conflicts of interest, real and/or apparent.

"SEZA is handling three aspects of the TIC's litigation needs. SEZA is a major creditor of the TIC for past attorney's fees. If Mr. Epstein's group became an owner, he would be a creditor, member of the TIC, and ongoing

counsel for the TIC[8]. The distinct duties and responsibilities of such an owner create a real risk of causing a conflict of interest to develop.

"A partner in a law firm cannot due [sic] what his or her partner cannot do. Thus, even the creation of a firewall between Mr. Epstein and his partners who could handle the litigation does nothing to ameliorate the real and/or perceived conflicts of interest. . . . Epstein . . . could potentially develop divided loyalties as between his firm and his cotenants. For example, if Mr. Epstein's partners decided to pursue collection of the fees currently due and owing and withdraw the current agreement to carry this debt until a later date, Mr. Epstein would benefit from the action of the firm as a creditor but it would be adverse to the TIC. If this conflict arose, it is questionable whether SEZA could then continue as counsel. The substitution of another firm at this hypothetical future date would result in a significant loss of money to the TIC because the new lawyer would have to spend significant time reviewing and understanding years of litigation.

"While the inherent conflict would not necessarily cause an immediate problem on transfer if the sale to [Sametc] were consummated, there is a palpable risk of resultant problems occurring in the future. The arbitrator is not making any findings or qualitative judgments concerning the relationship between SEZA and the TIC, but the proposed ownership interest of Counsel could evolve into an ethical conundrum with substantial economic losses from the retention of new counsel.

"It is challenging enough for the existing cotenants to get along with one another. Substituting [Sametc] into the mix will only exacerbate the

---

[8] As we have already indicated, in his subsequent Multiple Issues Arbitration Award, issued in April 2014, Arbitrator Block concluded that SEZA actually represented Jacques and Sollner only in its litigation work regarding third parties.

circumstances. The TICA recognizes the importance of its cotenants having confidence in one another and clearly the sale would only increase the distrust, angst, and importance of making decisions together that further the common good."

In arguing that the bar contained in the 2014 Judgment is permanent, Hindley makes much of Arbitrator Block's reference in these passages to the risk of "problems occurring in the future," and also notes that Arbitrator Block approved the sale to Sametc on the condition that Epstein not become an owner or TIC in the Property in the future without limitation. We disagree. It is apparent from these passages in the Initial Arbitration Award that Arbitrator Block's concerns were limited to conflicts of interest that might occur in the future based on the particular circumstances that existed at the time he issued the 2014 Arbitration Award. This is a ruling that, taken in its full practical context, fundamentally addresses problems or potential problems created by circumstances in the "here and now," *when the arbitration took place*—specifically, Epstein's then dual role as attorney for and creditor of TIC-related legal work. Arbitrator Block refers repeatedly to the fact that SEZA was already owed money for its TIC-related legal work and had agreed to "carry the debt to a later date"; if SEZA chose to pursue payment in the "hypothetical future" while it remained counsel and Epstein owned an interest in the TIC, Epstein would have a conflict between his interest in SEZA and his interest in the TIC; and SEZA's potential future pursuit of payment could require that another firm be substituted in for it, resulting in economic loss to the TIC because new counsel would need to spend significant time just coming up to speed. Contrary to Hindley's assertions, there is nothing permanent about this set of concerns. They are limited to problems that may be caused by SEZA's continuing to do legal

35

work benefitting the TIC's interests (including Hindley's interests) while being owed money from the TIC owners (including Hindley), directly or indirectly. We therefore agree with the superior court's ruling that the bar contained in the 2014 Judgment is temporary.

Hindley makes much of the ethical rule that " 'an attorney is forbidden to do either of two things after severing [a] relationship with a former client. [The attorney] may not do anything which will injuriously affect [the] former client in any matter in which [the attorney] formerly represented [the client] nor may [the attorney] at any time use against [the] former client knowledge or information acquired by virtue of the previous relationship.' " (*Oasis West Realty, LLC v. Goldman* (2011) 51 Cal.4th 811, 821 (*Oasis*); see Cal Rules Prof. Conduct, rule 1.9.) He misunderstands *Oasis*. Even if Hindley benefitted from the legal work SEZA (and hence Epstein) once did, that does not mean Epstein represented Hindley and had continuing duties of loyalty and confidentiality to Hindley, who was a third party to SEZA's (and hence Epstein's) former attorney-client relationship. (See, e.g., *B.L.M. v. Sabo & Deitsch* (1997) 55 Cal.App.4th 823, 839 ["We conclude . . . it would be inappropriate to hold an attorney liable to a third party for a legal opinion which the third party could not, . . . [absent a waiver of potential conflicts], have contracted to obtain from that attorney"]; see *Goodman v. Kennedy* (1976) 18 Cal.3d 335, 343–344.)

Even if there had been a finding here by Arbitrator Block that there was once some type of de facto attorney-client relationship directly between Hindley and SEZA (and hence Epstein)—he made no such finding—Hindley's reading of *Oasis* is still incorrect. By citing numerous cases that strictly apply the prohibition against attorneys representing parties with interests adverse to a *current* client without informed consent (e.g., *Santa Clara*

36

*County Counsel Attys. Assn. v. Woodside* (1994) 7 Cal.4th 525, 548; *Anderson v. Eaton* (1930) 211 Cal. 113, 116; see Cal. Rules Prof. Conduct, rule 1.8.1) and loosely conflating the rules governing current representation with the rules enunciated in *Oasis*, Hindley fails to appreciate that there is no such thing as a perpetual duty to a former client. As a practical matter, changed circumstances over time will at some point mean that (1) there is no risk of an attorney injuring a former client's interest " 'in any matter in which the [attorney] represented the client' " (*Oasis, supra*, 51 Cal.4th at p. 821), because transactionally the past representation will be deemed not substantially related to the client's current circumstances, or (2) there is no risk that an attorney's " 'knowledge or information' " from the past may be used against a former client (*ibid*.), because that information is stale or has little or nothing to do with the former client's current circumstances. Thus, *Oasis* cuts against Hindley because, even if we were to accept his premise that at some point Epstein had a duty to him—an assertion that, as noted, is not established by the record—the holding in *Oasis* is congruent with a reading of the bar Arbitrator Block placed on Epstein—and adopted in the 2014 Judgment—as temporary in nature and subject to expiration with changing circumstances.

Hindley also argues that, because Sametc asked the court in 2014 to approve its purchase of an interest in the TIC from Jacques based on Epstein's divestment from Sametc—which it represented to the superior court was complete and final—Sametc is barred by the doctrines of estoppel and invited error from arguing the 2014 Judgment contains a temporary bar. He contends Sametc received the benefits of the court's approval of its request and then attempted to repudiate it, and sat on its rights until 2020. These arguments make no sense because the record does not indicate

37

anywhere that Sametc ever advocated or requested a permanent bar. We conclude they have no merit.[9]

## 2. The Superior Court Erred by Ordering a "Remand" of This Matter to Arbitration

Hindley argues the superior court lacked "ordinary" jurisdiction to remand the matter to arbitration to determine if the bar contained in the 2014 Judgment should be maintained or dissolved, citing Code of Civil Procedure sections 1287[10] and 1294[11], as well as *People v. Ford* (2015) 61 Cal.4th 282, 287 ("When a trial court has fundamental jurisdiction but fails to act in the manner prescribed, it is said to have acted 'in excess of its jurisdiction,' " it having taken "an ordinary act in excess of jurisdiction".) According to Hindley, the only statutory authority for a court's remand of a matter back to arbitration is found in sections 1287 and 1294, which permit remand only when the court vacates the award. Hindley also argues remand is particularly inappropriate because the superior court confirmed the 2014 Arbitration Award and Arbitrator Block did not reserve jurisdiction over the matter (see, e.g., *Roehl v. Ritchie* (2007) 147 Cal.App.4th 338, 340–341, 348–

---

[9] In light of our conclusion, based on Arbitrator Block's statements in the 2014 Arbitration Award and Initial Arbitration Award, that the bar contained in the 2014 Judgment is temporary, we need not and do not address the parties' debate over whether we should consider the parts of the declarations of Epstein and Jacques, submitted below in support of Sametc's Clarification Motion, regarding purported oral statements by Arbitrator Block during the arbitration, which Hindley argues constitute inadmissible hearsay.

[10] Code of Civil Procedure section 1287 states in relevant part, "If the award is vacated, the court may order a rehearing before new arbitrators."

[11] Code of Civil Procedure section 1294 states in relevant part that "[a]n aggrieved party may appeal from" "[a]n order vacating an award unless a rehearing in arbitration is ordered." (Code Civ. Proc., § 1294, subd. (c).)

352 ["An arbitrator cannot amend an award after the trial court has confirmed it," but could issue a second award if he or she chose as a remedy "an incremental or multistep process"]).

Sametc argues that the trial court not only correctly interpreted the 2014 Judgment, but that he also correctly "remanded" the case to Arbitrator Snowden to "decide whether to maintain or dissolve the bar on [Epstein's] ownership." Citing *Swan Magnetics, Inc. v. Superior Court* (1997) 56 Cal.App.4th 1504, 1510 (*Swan Magnetics*), Sametc contends "[t]he trial court was not the proper forum in which to seek an amendment of the injunction." *Swan Magnetics* is not controlling on the "remand" issue. We are not dealing with an amendment to or modification of an arbitrator's injunction. At issue here is *clarification* of the meaning and scope of an injunctive provision in a judgment issued by a *court* following confirmation of an arbitration award, not modification of an injunction issued by an arbitrator. Even if the words "amendment" or "modification" were accurate descriptive terms for what the trial court did, the time to argue about whether the 2014 Arbitration Award did, or did not, conform to the parties' agreement to arbitrate, and if it did not, to consider any issue of partial vacatur or correction, was in the proceedings in 2014 seeking to confirm it and reduce it to judgment. Beyond that procedural point, it makes no sense to speak of "modifying" or "amending" the 2014 Arbitration Award, since for all practical purposes that award no longer existed, having been converted into a judgment.

To be sure, we agree with the observations in *Swan Magnetics* that "[t]he strong judicial and legislative policy in favor of arbitral finality," as reflected in *Moncharsh* and many other similar decisions (see e.g., *Advanced Micro Devices, Inc. v. Intel Corp.* (1994) 9 Cal.4th 362), "is directed at judicial

39

second-guessing upon petitions to confirm, correct, or vacate arbitration awards." (*Swan Magnetics*, *supra*, 56 Cal.App.4th at p. 1510.) But we are not dealing with a petition to confirm, correct or vacate an arbitration award, and, since we are many years beyond that procedural stage in this case, we do not agree with the broad language in the *Swan Magnetics* opinion suggesting that, even after confirmation of an arbitral award, the ensuing judgment is subject to more circumscribed judicial authority than courts ordinarily have when dealing with their own judgments. That aspect of the *Swan Magnetics* analysis, in our view, is at odds with the plain statutory language governing confirmation of arbitral awards. (See Code Civ. Proc., § 1287.4 ["The judgment so entered [on a confirmed arbitration award] has the same force and effect as, and is subject to all the provisions of law relating to, a judgment in a civil action . . . ."].)[12]

Sametc cannot have it both ways. Either the trial court was within its power to interpret its own injunction and decide the continuing force of that decree, or it was not. And on this procedural detail, we think Hindley has the better of the argument. We see no reason why, having clarified the terms of the 2014 Judgment, there was any impediment to the trial court deciding whether conditions existed justifying dissolution of the injunctive language in the 2014 Judgment, according to its terms. The 2014 Judgment confirming the 2014 Arbitration Award long ago became final. Sametc has not cited any legal authority establishing the superior court's power to remand anything

---

[12] The passage in *Swan Magnetics* discussing Code of Civil Procedure section 1287.4 (see *Swan Magnetics*, *supra,* 56 Cal.App.4th at pp. 1510–1511) appears to be directed to a scenario where a court, post-confirmation, decides to do something *inconsistent* with a prior arbitral decision under the guise of making "further orders related to [the] judgment" to add to or vary from the terms of the confirmed award. (*Swan Magnetics*, *supra*, 56 Cal.App.4th at p. 1511.) Suffice it to say that that is not the scenario we have in this case.

for further consideration to a no longer extant arbitration proceeding after the arbitrator issued a final arbitration award that was confirmed in a judgment that became final years ago. The only two cases Sametc cites in support of its argument to the contrary involve yet-to-be confirmed arbitration awards, prior to entry of final judgment. (See *Mossman v. City of Oakdale* (2009) 170 Cal.App.4th 83, 86; *A.M. Classic Construction, Inc. v. Tri-Build Development Co.* (1999) 70 Cal.App.4th 1470, 1472–1474.) That is not the case here.

The parties in this case agreed to arbitrate a certain set of disputes. After an arbitration took place to resolve one such dispute, and the award was confirmed, the underlying arbitration was finished. To the extent there were ambiguities in what amounted to injunctive relief in the award as confirmed, the court had authority to clarify those ambiguities since it was, in effect, clarifying its own judgment. But the arbitration itself was completed and cannot be reopened. The relationship of an arbitrator to a trial court that confirms an arbitral award is not analogous to a trial court and an appellate court under the familiar circumstances where, after review, the appellate court returns jurisdiction to the trial court via remittitur. We therefore conclude that the superior court in CPF-14-513720 lacked the authority to "remand" anything to Arbitrator Snowden, since at the point of confirmation, when the arbitration award was reduced to a judgment, the parties' agreement to arbitrate the dispute that triggered the arbitration was fully executed. We will order the superior court to strike that part of its 2020 Court Order and proceed to decide whatever factual and legal issues that

may need to be decided in order to determine whether the bar on Epstein's ownership of the property should remain in place.[13]

## III. DISPOSITION

We remand with instructions to strike the portion of the 2020 Court Order remanding the matter to the arbitrator. In all other respects, the 2020 Court Order is affirmed. The parties shall bear their own costs of appeal.

STREETER, Acting P. J.

WE CONCUR:

GOLDMAN, J.
FINEMAN, J.*

---

[13] As indicated above, we do not consider the merits of the 2019 Arbitration Award. (See *ante*, p. 12, fn. 2.) When Hindley filed his notice of appeal in this case (No. A161771), the 2019 Arbitration Award was the subject of his Petition to Modify or Vacate in trial court docket No. CPF-19-516917. The Motion to Modify or Vacate was taken off calendar pending the erroneous "remand" to Arbitrator Snowden, and Hindley noticed a second appeal (No, A161828) from the off-calendar order. As noted above, we initially consolidated appeal Nos. A161771 and A161828, but we dismissed Hindley's appeal from the off-calendar order on grounds that that order was non-appealable. Now that, in appeal No. A161771, we have resolved the issue of whether the bar on Epstein's regaining ownership in the Property was temporary or permanent, we assume that, under the rules of res judicata, our opinion today will likely control the outcome of the Petition to Modify or Vacate. But since Arbitrator Snowden reached the same conclusion that the trial court did in clarifying the 2014 Judgment, that issue is probably academic in any event.

* Judge of the Superior Court, County of San Mateo, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.